ROBERT DOUGLAS *vs.* WILLIAM M. BLACKFORD.

A testator devised to his son, Henry, "the home place or farm whereon I reside," (subject to the charge of two legacies in favor of his daughters,) "excepting only the land hereinbefore devised to my son, Franklin, and the land hereinafter devised to my son, William." He then devised to his son, William, "my *lower farm* whereon Joseph Knode now lives, *to wit, the three parcels of land at different times acquired by purchase from the heirs of Thomas Shepherd, Dr. Hays*, and the trustee appointed to sell the real estate of Jacob Bedinger," and directed his executor to "sell and convey all the rest and residue of his estate, real, personal and mixed." These two farms adjoined each other, but were worked separately. In the lower farm were four parcels of land acquired by the testator at different times : one from David Moore, who had recently purchased it from the executors of Thomas Shepherd, and on this tract were the buildings in which Knode resided; another from the executor of *Dr. John J. Hays;* another from *Dr. Joseph C. Hays*, who had recently purchased it from the executor of *Dr. John J. Hays*, and the fourth from the trustee of Bedinger. HELD :

1st. That this will does not present the case of a latent or patent ambiguity, and the tract purchased from the executor of *Dr. John J. Hays* passed to William, both that tract and the one acquired from *Dr. Joseph C. Hays* being regarded by the testator as but *one tract*, under the general description of *the land acquired from Dr. Hays*.

2nd. The description, "the three parcels," &c., following the words, "*to wit,*" is but *suggestive* of what was meant by the previous designation, "*lower farm,*" &c., and not *restrictive.*

3rd. If the devise to William *stood alone*, the general expression, "*my lower farm,*" &c., would be controlled and governed by the subsequent description, and the land described as that acquired from *Dr. Hays* would be confined to that only which was actually purchased from *Dr. Joseph C. Hays.*

4th. The direction to the executor in the last clause, to sell the residue of the *real estate*, is merely precautionary, inserted to meet the contingency of having omitted to devise any portion of it in the previous clauses of the will.

5th. The terms, "home farm," "lower farm upon which Joseph Knode now lives," and "the land acquired from the heirs of Thomas Shepherd," must all be ascertained by evidence *aliunde* the will itself.

In construing wills, the intention of the testator must be derived from the will itself, and when ascertained must prevail.

In ascertaining this intent, the whole context of the will must be considered, and force given, if possible, to every material word in it, and the whole construed so as to reconcile and harmonise every word and expression used by the testator, if it can be done, so as to reach the general plan or scope of the entire will.

A general description must yield to and be controlled by a more particular and certain designation, if the latter contradicts the former.

In construing wills, though the authority of decisions are not to be disregarded, yet the construction of them is so much governed by the language, arrangement and circumstances of each particular instrument, that adjudged cases become of less authority and of more hazardous application than decisions upon any other branch of the law.

APPEAL from the Circuit Court for Washington county.

*Trespass, quare clausum fregit,* by the appellant against the appellee, to try the title to a tract of land, containing thirty-six and one-half acres, which was conveyed by deed from William Price, executor of Dr. John J. Hays, to Col. John Blackford, dated the 20th of January 1827. The controversy in the case arises upon the construction of certain clauses in the will of said John Blackford, which are set out in the opinion of this court. The plaintiff claimed title to the land in question through conveyances from Henry V. S. Blackford, mentioned in the *fifth* clause of said will, whilst the defendant claimed the same under the *sixth* clause thereof.

2    v.7

*Exception.* The documentary proof in the case shows, that the testator, Col. John Blackford, prior to the year 1827, owned and possessed several tracts of land adjoining each other, containing in all about three hundred acres; and that on the 20th of January of that year, the land in dispute was conveyed to him by deed from William Price, as executor of Dr. John J. Hays. The land is described in the deed by metes and bounds, and was part of a tract called "Antietam Hills." On the 25th of March 1828, the said John Blackford and Adam Myers, as executors of Thomas Shepherd, conveyed by deed to David Moore a tract of land, containing one hundred and thirteen and one-eighth acres, which the said Moore, on the 7th of May of the same year, conveyed by deed to the said John Blackford. These two last named tracts were contiguous to the other land of the said Blackford, who afterwards, by a special warrant of resurvey, included all his lands, amounting then to four hundred and fifty acres, in one tract, and obtained a patent for the same, under the name of "Moreland," dated the 18th of May 1830. Afterwards, on the 18th of November 1835, the said Blackford purchased, and received a conveyance therefor, from Dr. Joseph C. Hays and wife, another small tract of land, containing five and three-quarters acres, which, on the 10th of October 1833, the said Joseph C. Hays had purchased from William Price, as executor of the said Dr. John J. Hays, and had received a deed therefor of that date from the said Price. Again, on the 22nd of December 1837, the said Blackford purchased, and received a conveyance therefor, from Robert M. Tidball, trustee for the sale of the real estate of Jacob Bedinger, another tract of land, containing fifty acres; and on the 1st of November 1839, executed his will, making therein the dispositions of his property, which are set out in the opinion of this court, and died in the same year. The two tracts last purchased also adjoined his other lands.

The plaintiff's claim of title consisted:—1st, of a deed, dated the 17th of June 1846, from Henry V. S. Blackford to Franklin Blackford, conveying to the latter all the land which

the former acquired under the will of his father, the said Col. John Blackford; and 2nd, a deed, dated the 19th of October 1848, from the said Franklin Blackford, conveying the same lands to the plaintiff.

The trespasses were admitted, and the defendant, for the purpose of sustaining the issue on his part and of raising the legal questions upon the true construction of the will of the said John Blackford, offered, subject to all exceptions, the parol testimony of Joseph Knode, who testified that he resided on a part of the land of the testator, in his lifetime, four years before his death, and lived there at the time of his death. That in 1831 or 1832, when witness lived with the testator as overseer on the upper farm, the testator took witness to the corner, which he called Myers' corner, and told him to take a black man, with a mattock, and then observed, "Joe, I am going to plant a stone and run a line to the Hays line," and enjoined witness to remember it, as he, the witness, was young, and stated that if ever any difficulty arose between his children, he could put it right. That the testator designed to throw the small portion of the home farm to the lower farm, and that the lower farm consisted of this portion of the home farm, the Bedinger farm, the Hays tract and the Shepherd land. That in 1835 or 1836, the testator purchased the five acres from Joseph C. Hays to make his line straight with the Shepherd tract. That often afterwards, as many as twenty times, the testator, when passing the line run from Myers' corner, would ask witness if he remembered that line, and reminded him, the witness, of what he had done. That in 1837, after the purchase of the Bedinger tract, witness asked the testator how many acres there were in the lower farm, who replied, "I guess, as near as I can come at it, there are two hundred and twelve acres." At that time there were from sixty to seventy acres of timber land on the upper farm, which is now cleared up. When the line was run, the testator moreover said that there should be no cutting beyond that line on either side. When witness occupied the lower farm this land was in it, and he and other tenants had

the right to cut on it. Witness planted the stone, and the testator then pointed out the line as it was to run to the Hays land, as a division. The stone was planted at the corner of the Myers fence or division, and those fences are still there as then; and when the testator first marked out the line, he walked across to the Hays line and put a peg there, which cannot now be found, and the testator said he intended to run a fence on that line. Witness lived on the lower farm two years after the testator's death, and occupied it up to that line, including the thirty-six acre tract, as he had occupied it before his death. The testator, the night before he made his will, valued the home farm at $75 per acre; the lower farm was then worth from $55 to $58 per acre; and at the same time witness heard the testator say he intended to give the home farm to his son, William M. Blackford. There never was a fence placed on the said line which the testator established as the division line between his upper and lower farm. Witness lived eighteen years in all on the land, seven years as tenant and eleven years as overseer of the home or upper farm. The last time witness had any conversation with the testator about this division line, the testator told witness to remember that line; that he had frequently thought of planting a fence there, but it had never been done. At the time the testator planted the stone at the Myers corner, he observed to witness, I throw this corner of the home farm to the lower farm, and that he would put a fence there. From the year 1827 or 1828, after the testator purchased the Shepherd tract, there was always a tenant on the lower farm, including the thirty-six acre tract in dispute, which the testator always called the Hays tract.

Upon cross-examination the witness said, there was no other division of the whole body of land than the division of it into two farms, the home farm and the lower farm. The division line spoken of by the witness was a division line which the testator intended to make of his farms, commencing at the Myers corner and running down to what the witness calls the Hays tract. The testator never actually made the

division further than what the witness has said.   The testator
said he intended to put a fence there, and the fence, when
put there, was to be the division fence.   Witness regarded
that as the line upon which a fence was to be placed, but no
fence was ever put there.   The night before the testator made
his will he told witness, in speaking of that division, to remem-
ber that line, that he frequently thought of putting a fence
there, but never had put it there.

The defendant also proved by Downin, the surveyor, that
by the line located by the witness, Knode, four and one-quarter
acres of land of the home farm are thrown to the lower farm;
that part is in timber.   The buildings in which Knode lived
and resided were on the Shepherd tract.

The plaintiff then prayed the court to instruct the jury, as
follows:

1st.  That the will of John Blackford in the devises therein
contained to his sons, Henry V. S. Blackford and William
M. Blackford, does not present the case of a latent ambiguity,
and that parol evidence is not admissible to show an intention
different from that expressed by the words of the will.

2nd.  That notwithstanding the jury may believe the several
facts deposed to by Knode, and find that the testator did, in
his lifetime, make the several declarations testified to by
Knode with reference to the division of his home farm from
his lower farm, yet by the true construction of said will the
intent and meaning of the testator is still free from ambiguity,
and that the construction of said will must be made from its
face alone, and that the said parol and extrinsic evidence so
adduced by the defendant is wholly inadmissible.

3rd.  That by the true construction of said will the land
conveyed as aforesaid by William Price, executor of John J.
Hays, to the testator, did not pass by said will to William M.
Blackford, the defendant.

4th.  That by the true construction of said will, the said
land did pass thereby to the said Henry V. S. Blackford,
under whom the plaintiff claims title.

These instructions the court, (PERRY, J.,) refused to give,

but ruled that parol testimony was admissible for the purpose of showing and explaining to the jury the land intended to be devised by said will, and for the purpose of showing to the jury the land or property described by the testator in his will as the lower farm on which Joseph Knode resided at the time of the execution of said will.

To this refusal, as well as the said ruling of the court, the plaintiff excepted, and the verdict and judgment being in favor of the defendant, appealed.

The cause was argued before ECCLESTON, TUCK and MASON, J.

*Richard H. Alvey* and *William Price* for the appellant, insisted, that the devise to William M. Blackford of "my *lower farm* whereon Joseph Knode now lives, to wit, the *three parcels of land* at different times acquired by purchase from the heirs of Thomas Shepherd, Dr. Hays, and the trustee appointed to sell the real estate of Jacob Bedinger," is restricted to the *three* following parcels, viz:—1st, to the tract of one hundred and thirteen and-a-half acres conveyed by Blackford and Myers, as executors of Thomas Shepherd, to Moore, and by him reconveyed to the testator in 1828; 2nd, the tract of five and three-eighths acres conveyed to the testator by Dr. Joseph C. Hays and wife, in 1835; and 3rd, the tract of fifty acres conveyed to the testator by Tidball, trustee, to sell the real estate of Bedinger, in 1837, and that the tract of thirty-six and one-half acres conveyed to the testator by William Price, as executor of Dr. John J. Hays, was not comprised in this devise, but passed under the previous devise to Henry V. S. Blackford.

This devise to William is an *exception* out of the general devise to Henry, and is confined expressly to the *three* tracts therein named. The testator intended to give Henry a larger portion of his land, because the part devised to him was encumbered with the legacies payable to his sisters. We say these devises do not present the case of a latent ambig-

Douglas *vs.* Blackford.

uity, and that parol evidence is not admissible to show an intent different from *that expressed by the words of the will.* It is true that in one sense all devises may be said to present some question of latent ambiguity, for you must in every case go outside of the will and by extrinsic evidence ascertain the *subject* to which the devise applies, and thus effectuate the intention of the testator.    In every will there is a *devise* and a *subject;* the former is in writing, the latter is *in pais;* the devise cannot go to the subject, it must be applied to it by extrinsic evidence.    But that is not the purpose for which the evidence in this case is sought to be used.    The attempt here is to explain what the testator *meant* by the words he has used, not what the words as *written* mean.

A *latent ambiguity,* in the sense in which it is used in the books, arises:—1st. Where the description of the thing devised or of the devisee is certain, and there are two subjects equally answering the description.    In such a case parol evidence is admissible to explain which the testator meant. 2nd. Where the description is true in part and not true in every particular: in such case parol evidence will be admitted to show the identity of the thing devised, with the truthful part of the description; but then there must be proof that the particular description is imperfect or untrue. This comes under the head of parcel or no parcel.    For example, where the description in the devise is in general terms, as "a farm," or "an estate," and some adjunct is added which may or may not belong to it, the evidence is then received, not to give a *meaning to the devise;* the devise is of the farm, and the evidence is as to parcel or no parcel of the farm; the meaning of the will is, to pass the farm and all that belongs to it, and the parol evidence is admitted because the will does not decide the question of parcel or no parcel.    To sustain these views, and to show in what cases parol evidence is admissible to explain or clear up latent ambiguities, the learned counsel cited and commented upon the following authorities:    1 *Jarman on Wills,* 342, 354, 359, 360, 367, 370, 377.    2 *Mees. & Wels.,* 128, *Gord vs. Needs.*

5 *Do.*, 363, *Hiscocks vs. Hiscocks.* 3 *Taunt.*, 147, *Chicester vs. Oxenden.* 5 *Md. Rep.*, 297, *Walston vs. White.* 8 *Bing.*, 244, *Miller vs. Travers*, in 21 *Eng. C. L. Rep.*, 288. 1 *Maule & Selw.*, 299, *Goodtitle vs. Southern.*

But there is another class which includes the present case, and that is, where the devisor employs general terms but has not chosen to stop there, but proceeds to specify what he means by such general description. In such case the will itself decides the question of parcel or no parcel, and then parol evidence is not admissible. The general description is *restricted* by the testator himself, and the meaning of the devise cannot be expanded by extrinsic evidence. This principle is sustained by the following authorities. 3 *Ves.*, 192, *Wilson vs. Mount.* 5 *East*, 51, *Conolly vs. Vernon.* 3 *Atk.*, 9, *Gascoigne vs. Barker.* 2 *Burr.*, 910, *Strong vs. Teatt.* 7 *G. & J.*, 227, *Creswell vs. Lawson.* 7 *Johns.*, 223, *Jackson vs. Clark.* 3 *Preston on Abstracts of Title*, 205, 209. 3 *Md. Rep.*, 446, *Cole vs. Ensor.* 7 *New Hamp.*, 241, *Woodman vs. Lane.* 5 *Do.*, 536, *Barnard vs. Martin.* Now, to apply the principle of these cases to the will before us, the point to be determined is, what is comprehended in the term, "*lower farm?*" The devise is, "my lower farm on which Joseph Knode now lives." If the devise had stopped here, the question what constituted the lower farm would have been matter *in pais*, and the evidence of parcel or no parcel would have been admissible. But the will itself settles this question; it proceeds to specify, "to wit, the *three parcels*," &c., thus giving a precise meaning to the term, "lower farm." The case then is the same as if the words "lower farm" were left out, and the testator had said, I give to my son William "the *three parcels*," &c. The office then of this parol proof is contrary to the plain meaning of the words as written, to strike out *three* parcels and insert *four*, and to add the words, "and the executor of Dr. John J. Hays." This we have shown cannot be done. The operative words are "*to wit*," which are the same as "viz," or "that is to say," or "consisting of," and are *restrictive* of the previous general term, "lower farm."

Douglas *vs.* Blackford.

Now the theory of the other side is, that there is:—1st, a general description, which is true, and 2nd, a particular description, which is false or mistaken, and then they apply the rule, "*falsa demonstratio non nocet.*" Their theory rests upon the assumption that there are two descriptions which are incompatible and cannot stand together, but this is not so. There is but *one* description. Let us place ourselves in the position of the testator when he wrote this clause of the will; he first gives a general description by the term "lower farm," but immediately perceiving that this *might mislead*, he specifies what his meaning is, that is, "the *three parcels*," &c., and no more. These three parcels are all there; you can find them. There is no difficulty then upon the face of the will. This is made by the parol evidence, and that fails to clear up the difficulty which itself has made. It sets up an arbitrary line of division wholly at variance with the will, and that line too never *established* by the testator. Nay more, this line departs from the will altogether; there is but *one* Dr. Hays mentioned in the will, whereas this proof seeks to insert one and the executor of *another*. There are but *three* parcels named in the will, and this proof seeks to insert four, and this, we are told, is upon the ground that the description by the will is *false* or *mistaken*. And who proves all this? Mr. Knode, whose testimony demonstrates the wisdom of that rule of law which makes all written instruments speak for themselves, for he says the testator told him he intended to give his "*home farm*" to his son William, whereas the will gives it to Henry. If the testator changed his mind as to this devise, might he not also have changed it in reference to the line spoken of by this witness?

Again, our construction harmonises with every other part of the will. The "home farm," devised to Henry, consisted of all the lands of the testator, except those portions which he devised to Franklin and William.

*J. Dixon Roman* and *Daniel Weisel* for the appellee, insisted, that upon the construction of the whole will the land in dispute

passed to William M. Blackford. We must keep in view the paramount rule of construction in such cases, that the intention of the testator, as expressed in the will, must govern. The evidence shows that all the land of the testator was divided into two farms, called the *"home place"* and the *"lower farm,"* separated by a division line well established and well known, and that these farms were worked independently of each other, and were as distinct and separate as if they were apart from each other and not contiguous. The question then is, is this evidence admissible to show these facts? We say:

1st. That a clear case of latent ambiguity is presented by this will, and that parol evidence is absolutely indispensable, as well to show the boundaries of *"my home place whereon I now reside,"* devised to Henry, as to show the extent of *"my lower farm whereon Joseph Knode now lives,"* devised to William. 1 *Greenlf. on Ev.,* secs. 287, 289. *Wigram's Rules of Law,* 64, *Proposition,* 5. 6 *Pet.,* 75, *Smith vs. Bell.* The extrinsic evidence in this case was offered, not to explain the *intention* of the testator, but to explain what the meaning of the words of his will are, and to apply them to the subject matter of the devise.

2nd. The devise to William *"of my lower farm whereon Joseph Knode now lives,"* was a full and perfect description, sufficient to pass the whole as divided and held, and the additional defective description was merely *"suggestive,"* and not *"restrictive."* Where there is one full description of the property the testator intended to devise, the addition of a false description will not vitiate it. In other words, *falsa demonstratio non nocet* is the true principle applicable to this case. 1 *Barn. & Ald.,* 550, *Beach vs. The Earl of Jersey.* 1 *Maule & Selw.,* 299, *Goodtitle vs. Southern.* 2 *Barn. & Adol.,* 680, *Gore vs. Langton,* in 22 *Eng. C. L. Rep.,* 167. 1 *Greenlf. on Ev.,* secs. 301, and 393, *note.* 1 *Merivale,* 652, *Sanford vs. Raikes.* 4 *Dana's Rep.,* 336, *Venable vs. McDonald.* 4 *Day,* 265, *Doolittle vs. Blakesly.* 3 *H. & J.,* 329, *Buchanan vs. Steuart.* 7 *G. & J.,* 251, *Creswell vs. Lawson.*

15 *Johns.*, 471, *Jackson vs. Barringer.*    4 *Mass.*, 196, *Worth-ington vs. Hylyer.*   7 *Greenleaf's Rep.*, 366, *Drinkwater vs. Sawyer.*

3rd. The designation of the *three* tracts in this devise was defective, for there was no land purchased from "the *heirs* of Thomas Shepherd." The deeds for this tract shows that it was originally sold by the executors of Thomas Shepherd to David Moore, and by *him* conveyed to the testator. The testator never acquired any land by purchase from the *heirs* of Thomas Shepherd, and there is no such deed to him in the record. The land purchased "from Dr. Hays" would as well have included that purchased from the *executor* of Dr. John J. Hays, as the description "from the heirs of Thomas Shepherd" would include land acquired from the *executors* of Thomas Shepherd. Which Hays does he mean when he speaks of "*Dr. Hays?*" Both these gentlemen were doctors, and the small tract of land which the testator purchased of *Dr. Joseph C. Hays* belonged originally to *Dr. John J. Hays,* the original owner of the land in dispute, and had, a short time previous to the conveyance to the testator, been purchased by the said Dr. Joseph C. Hays from the executor of Dr. John J. Hays. The testator always called this land the Hays tract or the Hays land, and when he uses the terms in his will, "acquired by purchase from the heirs of Thomas Shepherd, *Dr. Hays,*" &c., he evidently meant to include all the land held by him which originally belonged to *Dr. John J. Hays;* all these facts show that he used the phrase "*to wit*" in a *suggestive* and not a *restrictive* sense, and that in the description following these words he did not intend to be particular and *restrictive,* but simply to *suggest* the *sources* from which all the land comprised in his lower farm was derived.

4th. "The home farm" cannot extend beyond the division line spoken of by the witness Knode. It was the old original three hundred acres on which the testator had always resided. But if the land in dispute did not pass to William, it will go to the executors under the eighth clause.

The counsel also contended, that the plaintiff's prayers were defective in various particulars, which need not be stated.

MASON, J., delivered the opinion of this court.

The proper construction of the will of the late Col. John Blackford, of Washington county, is the question presented on this appeal.

The real estate of the testator, forming the subject of the several devises which are now before us, consisted of a number of tracts or parcels of land, acquired at different times and from different persons, but lying all contiguous to each other. One of the tracts aforesaid was purchased from William Price, executor of Dr. J. J. Hays, in 1827; and in 1828, another was purchased from David Moore, it being the same which had belonged to Thomas Shepherd's heirs, and which had been but a short time before sold by Col. Blackford, as executor of said Shepherd, to the said Moore. Afterwards, in 1830, by a special warrant of resurvey, the testator included all the land he then owned in one tract, and received a patent for the same under the name of "Moreland."

Again, in 1835, another small parcel of land was purchased from Dr. J. C. Hays, who had purchased it previously from Mr. Price, as executor of Dr. John J. Hays, and in 1836, still another was added by purchase from R. M. Tidball, *(vir plenus fidei,)* the trustee for the sale of the real estate of Jacob Bedinger. All these several tracts of land, thus mentioned, were conveyed by deeds and described by courses and distances. The estate owned by the testator before any of the additions were made to it, which we have enumerated, consisted of about three hundred acres, and by those additional purchases it was swollen to upwards of five hundred acres, and such was its condition when Col. Blackford died.

The portions of the *fifth,* *sixth* and *eighth* clauses of the will, to which our attention has been particularly directed, and out of which the present controversy arises, are as follows, namely:

"*Fifthly.* To my dear son, Henry V. S. Blackford, and his

heirs, I give, devise and bequeath the home place or farm whereon I reside, excepting only the land hereinbefore devised to my son Franklin, and the land hereinafter devised to my son William. And my will is, that my said son, Henry, and his heirs, shall hold said land, subject to and expressly charged with the payment to each of my daughters, Janet Smith and Helen Blackford, of the sum of two thousand, five hundred dollars.

"*Sixthly.* I give, devise and bequeath to my dear son, William Moore Blackford, and his heirs, my lower farm whereon Joseph Knode now lives, to wit, the three parcels of land at different times acquired by purchase from the heirs of Thomas Shepherd, Dr. Hays, and the trustee appointed to sell the real estate of Jacob Bedinger.

"*Eighthly.* I authorise, empower and direct my executors to dispose of, sell and convey all the rest and residue of my estate, real, personal and mixed," &c.

The first and main question to be determined is, what land passed, under the above devises, to William Moore Blackford? It will be observed, that the difficulty in settling this point arises out of the circumstance, that the testator employed *two descriptions* of the land he intended to give this son. In the first place he calls it "the lower farm whereon Joseph Knode now lives," and again, it is designated as "the three parcels of land at different times acquired by purchase from the heirs of Thomas Shepherd," &c., and these two descriptions, it is supposed, are in conflict. If either one had been omitted, we might have had less trouble in ascertaining what was meant by the other, standing thus alone.

This devise, in our opinion, does not present the question of a *latent or patent* ambiguity, in the sense in which that question is generally understood in reference to wills and deeds, but the point to be determined is, can the two descriptions employed by the testator be reconciled with each other and with the other portions of the will; or, if they are in conflict, which is to prevail? and these questions are to be settled from the face of the will itself.

In one aspect, as was properly remarked in argument, all devises may be said to present some question of latent ambiguity, and whatever view we may take of the present will, parol or extrinsic evidence must be resorted to, in order to effectuate the objects of the testator.   For example, the terms, "*home farm*," "*lower farm upon which Joseph Knode lives*," "*the land acquired from the heirs of Shepherd*," &c., must all be ascertained by evidence *aliunde* the will itself.

Great research and ability have been displayed, and numerous authorities cited, in the argument of this question, and we acknowledge the difficulties that surround the case.   We agree with Chancellor Kent, that "though we are not to disregard the authority of decisions, even as to the interpretation of wills, yet it is certain, that the construction of them is so much governed by the language, arrangement and circumstances of each particular instrument, that adjudged cases become of less authority and are of more hazardous application than decisions upon any other branch of the law."   4 *Kent's Com.*, 534.   And we therefore think, that upon the application of a few general, familiar, yet controlling principles, this case must depend, rather than upon the determination of other cases.

In the first place, the intention of the testator must be derived from the will itself, and when ascertained must prevail. If it were otherwise, and evidence were admissible to show that he meant something different from what his language imports, it is obvious that the law requiring wills of real estate to be *in writing*, would become nugatory.   In the second place, in endeavoring to ascertain the intention of the testator, the whole context of the will must be considered, and force and effect must be given, if possible, to every material word employed in it, and the whole must be so construed as to reconcile and harmonize every word and expression used by the testator, if it can be done, so as to reach the general plan or scope of the entire will.   The application of these simple, general and undisputed principles to the will now before us, will enable us to settle the present controversy without resort

to the many cases which have been cited and relied on in the progress of this argument.

If we were confined, in our efforts to ascertain the intention of the testator as respects the land he designed for his son William, to the *sixth clause* of his will, the views expressed by the appellant's counsel, as to the proper construction of that clause, would perhaps be incontrovertible. We concede the principle for which they contend, that a general description must yield to, and be controlled by, a more particular and certain designation; and that in the present instance the general expression, "*my lower farm whereon Joseph Knode now lives*," must be controlled and governed by the subsequent more certain description, if the latter contradicts the former; and we might, if necessary, go further and say, that if this clause stood alone, that it did contradict the former, insomuch that the land described as that acquired from *Dr. Hays*, must be confined to that only which was actually purchased from Dr. J. C. Hays, and thus adhere to the strict and literal import of the terms employed; while the *lower farm* was shown by the witness to embrace also the land acquired from Mr. Price, as executor of Dr. John J. Hays.

But, as we have already said, we must give force to, and reconcile *every part* of the will, if we can, and reach the general intent of the testator with reference to the disposition of his entire property. The testator has said, in the *fifth clause* of his will, that a part of *his home farm* was to pass to William, and if the particular construction to which we have just referred, and for which the appellant contends, is to prevail, how can this intention be gratified? If William got but the three parcels of land acquired from Dr. J. C. Hays, Shepherd's heirs and Bedinger's trustee, which of the three pieces would constitute that part of the *home farm* which he was to have?

This leads us to the inquiry as to what was meant by the *home farm*, or rather what was not embraced in the *home farm*? The only way in which we can gratify the construction of the sixth clause contended for by the appellant, is that we must suppose the testator included in his *home farm* the whole land

embraced within the lines of the *resurvey* or *Moreland.* In this view the *Shepherd land* having been part of the resurvey, might be supposed to be *the part* of the home farm intended for William. It will readily be seen that this cannot be the correct mode of solving the difficulty. The expressions, *home farm* and *lower farm,* are used by the testator manifestly to show that he treated his entire tract as subdivided into two distinct farms, operated independently of each other, and known by those terms, *home* and *lower* farm. Upon the Shepherd tract stand the buildings in which Knode lived, and if then that land is to be regarded as part of the home farm, the *lower farm* would thereby be deprived of that which was essential to its separate existence, namely, the dwelling-house, barn, &c., and thus the testator would be made to say that upon his home farm there were two sets of farm buildings, while upon the lower farm there were none, and that too in the face of his declaration in the will, that Knode *resided* upon the lower farm. We are therefore constrained to look for some other interpretation for the language used in the sixth clause. This, we think, we can readily accomplish, and that too without the violation of any of the recognised rules of construction.

The record shows that the land purchased from Dr. J. C. Hays, had originally belonged to Dr. John J. Hays, and had been sold by the executor of the latter to the former. The testator then must have had in his mind, when he was referring to the land *acquired from Dr. Hays,* the source from which both the Hays tracts had come, viz., Dr. John J. Hays, and that in fact he was treating both parcels as but *one tract,* under the general designation of *the land acquired from Dr. Hays.* The testator, in describing the Shepherd land, calls it the land acquired from *the heirs of Thomas Shepherd,* thus passing over entirely in the description the intermediate owner, Moore, from whom in fact he had purchased it, yet there can be no doubt as to what land was meant. In arriving at the same result as regards the Hays land, we are only required to suppose that the testator overlooked Dr. J. C. Hays in his

description, and referred exclusively to the original owner of the whole, Dr. John J. Hays. The same result can be still more easily reached by adopting, not an uncommon rule of construction, by making the antecedent substantive *heirs* distributive, making the sentence read thus: *acquired by purchase from the heirs of Thomas Shepherd,* "*the heirs*" *of Dr. Hays,* &c. In this view the testator could only have referred to Dr. John J. Hays, because his brother, Dr. J. C. Hays, was living at the time.

We are next to test the correctness of this construction, by ascertaining how far it would harmonise the remaining portions of the will. The two descriptions employed by the testator in the sixth clause, and which, by the construction placed upon them by the appellant, would be contradictory of each other, are made by this construction to harmonise perfectly. The *lower farm*, where Knode resided, and the *three parcels*, &c., are shown to be the same land—the latter description being merely *suggestive* of what was meant by the previous designation. The small portion of land taken off from the testator's original tract, or home farm, of three hundred acres, adjoining the land purchased from Mr. Price, as executor, to be added to the *lower farm*, is the part which was excepted out of the devise to Henry as the part of the *home farm* which was to go to William.

Looking to the condition of the testator, with reference to his several children, as well as his real estate, we have no hesitation in saying that the construction which we have placed upon his will is the one he intended it should bear.

In the view we have taken of this case, we must regard the direction to the executors, contained in the eighth clause, to sell the residue of the *real estate*, as merely precautionary, inserted to meet the contingency of having omitted to devise any part of it in the previous clauses of the will.

We have not deemed it necessary to examine and pass upon in detail the several prayers offered by the counsel, or specially to consider the instruction given by the court. The judgment was for the defendant, and the plaintiff could have

4     v. 7

framed no prayer under this will which the court ought to have granted, by which a different result could be attained. Whether the prayers and instructions were right or wrong, we find no error in the judgment, and therefore affirm it.

*Judgment affirmed.*