THOMAS A. CASSILLY ET AL., EXECUTORS, *v.*
JOHN L. DEVENNY

[No. 46, January Term, 1935.]

444

*Decided April 3rd, 1935.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Edwin H. W. Harlan* and *C. Damer McKenrick,* with whom were *Robert D. Bartlett* and *Bartlett, Poe & Claggett,* on the brief, for the appellants.

*Ernest Volkart,* with whom was *Leo A. Burke* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Mrs. Delia Cassilly, late of Harford County, Maryland, died on or about April 18th, 1932, leaving a last will which was in due course probated in the Orphans' Court of Harford County, and in which Robert R. Cassilly and Thomas A. Cassilly were named as executors.

Among its other provisions, that will contained the following: "I give and bequeath Three thousand ($3,000.00) Dollars to the heirs of John Devenny or to such, if any, of them as shall be located within one year from the day of my death and if none such shall be found within one year from the date of my death, the said sum of Three thousand ($3,000.00) Dollars shall fall into and become part of the residue of my estate." Within a year from the death of Mrs. Cassilly, one John Devenny, of Cincinnati, Ohio, notified the executors that he was entitled to the legacy, and demanded "payment of same." The demand was refused on the ground that the claimant had not submitted to the executors such proof as would enable them to decide whether or not he was entitled to all or any portion of the legacy. Thereupon, on April 10th, 1934, Devenny filed a petition in the Orphans' Court of Harford County, in which he prayed that court to order the executors to show cause why the legacy should not be paid. The executors answered, setting up the defense to which reference has been made, and the matter was heard upon those two pleadings and evidence. After that, on November 20th, 1934, the court ordered the executors to pay the "bequest of Three thousand dollars." This appeal is from that order.

The precise question, and the only question presented by the appeal, is whether the proof sufficiently identifies the claimant as a person entitled to claim the legacy bequeathed in the provision of Mrs. Cassilly's will quoted above.

It appears from the evidence that there was living in Cincinnati in 1890 a certain William H. Devenny, father of the claimant, who had, in some way not shown by the evidence, been associated with Thomas A. Cassilly, Sr., husband of Delia Cassilly. At that time William H. Devenny was, as the result of some accident, "mentally and physically incapacitated and had a silver plate in his head," and was in "the City Infirmary." Some time later, apparently in 1903, the claimant learned that his father was in the city infirmary, and "they decided to take him home."

William H. Devenny had six children, the claimant, Mary, Alice, Katherine, William, and James, and two brothers, Alexander and Captain Henry H. Devenny. The brother Henry H., the claimant's uncle, is dead long since, but all of the claimant's brothers and sisters survive, except Mary, who died leaving children. The claimant is married, but has no children.

After the death of his uncle, Henry H., and after he had learned that his father was in the city infirmary, and had taken him to the home of Mrs. Lake, claimant's sister, claimant wrote in 1903 to Thomas A. Cassilly, Sr., because he thought that Cassilly was his father's guardian. It appears also that Cassilly had been paying the expenses of William H. Devenny at the city infirmary, and, when he received the letter from the claimant, he replied: "Dear Sir: In reply to yours of the 20th I am sorry the guardian took your father out of the Infirmary as I think that was the best place for him where he could receive all the attention and be properly cared for. If you wish to take charge of him I am willing to pay you three hundred dollars a year the same that I paid the City. Yours truly, T. A. Cassilly." Thereafter, until the death of William H. Devenny in 1908, Cassilly appears to have sent monthly checks to John L. Devenny, and, upon the death of William H., he paid his funeral expenses. It may be inferred from the form and tone of the correspondence between Cassilly and the claimant that the relations between them were friendly, but formal

rather than intimate. In January, 1905, Cassilly sent claimant with the monthly check for twenty-five dollars a New Year's gift of five dollars, and in 1906 he wrote him this letter: "Dear Sir: Enclosed find check for thirty five dollars. January allowance and ten dollars for your children for Christmas. Wishing you all a happy Christmas, Yours truly, T. A. Cassilly." Upon his mother's death, which occurred in 1892, claimant's brothers and sisters were placed in an orphanage, but he, who was seven years old at that time, made his home with relatives. There is nothing to show that after the death of William H. Devenny the claimant had any further relations or correspondence with Cassilly, nor does it appear when the latter died.

For years before the death of William H. Devenny, Thomas A. Cassilly, Sr., contributed to his support, but the record does not show whether those contributions were prompted by sympathy for an old and helpless friend, or whether they were in discharge of some moral or legal obligation. There is evidence that at one time Cassilly, William H. Devenny, and his brother Henry H. Devenny, were associated in the same office, but there is nothing to show that they were associated in business or, if they were, what the business was. It also appears that in 1895 letters "Testamentary and Trusteeship" were granted to Cassilly on the estate of Henry H. Devenny, and that William H. Devenny, through a guardian, contested that will, but it does not appear whether under that will or as a result of the contest William H. Devenny received any share of his brother's estate, or that Cassilly was under any obligation to contribute to Devenny's support. It also appears that William H., Henry H., and Alexander Devenny were the sons of Alexander Devenny, Sr., and Martha J. Devenny, and that, at the death of Mrs. Delia Cassilly, Thomas A. Cassilly, Jr., one of the executors, requested the register of wills of Harford County to mark over his mother's will "Do not publish."

The language of the will, considered in connection with the facts admitted by the pleadings or shown by the evidence, suggests these questions: (1) In using the words "the heirs of John Devenny," did the testatrix mean to refer to the heirs of William H. Devenny or to the heirs of John L. Devenny, the claimant? (2) Did she mean to refer only to the claimant? and (3) If she did intend to refer to the heirs of John L. Devenny, does that description include John L. Devenny?

In connection with those questions it may be assumed, as an established principle of testamentary construction, that the intention of the testator will be ascertained and effected in so far as that may be done without violence to establish rules of law or public policy (*Miller, Construction of Wills*, sec. 9), for, as said by Judge Digges in *Hutton v. Safe Dep. & Trust Co.*, 150 Md. 539, 554, 133 A. 308, 313: "The intent of a testator is the law of wills, unless in conflict with some settled rule of law or of property." See also *West v. Sellmayer*, 150 Md. 478, 133 A. 333. It is also well settled that where, because of the language used, or as a result of the circumstances under which the will was executed, or because of the situation of the testator at that time, the description of its object may apply to one of several persons, parol evidence is admissible to remove the doubt. *Miller, Construction of Wills*, secs. 42, 43, as in *Clarke v. Sandrock*, 113 Md. 422, 77 A. 644; 94 *A. L. R.* 26, 79; *Underhill on Wills*, secs. 909, 910. But "if the court cannot, from a study of the context of the will, or by parol evidence, identify the persons intended to be benefited, so that it is utterly impossible to ascertain who is meant to take, the will must be to that extent void for uncertainty, and the testator is intestate." *Id.*, sec. 905. Or as stated by Miller in his work on the *Construction of Wills*, sec. 46; "It is said that in the construction of wills no degree of technical informality, or of grammatical or orthographical error, nor the most perplexing confusion in the arrangement of words and sentences, will deter the court from endeavoring to ascertain the intention of the testa-

tor, the faintest traces of which will be sought out from every part of the will and the whole carefully weighed together; but if it is impossible to penetrate through the obscurity, the inevitable consequence is the failure of the intended gift."

There is, however, this important limitation on that principle, that the scope and purpose of parol evidence to explain a latent ambiguity is not to supply an intent to the testator or to change one which he had expressed, but to identify the subject or the object of the devise or legacy (64 *C. J.* 135, 144), since it is admissible only to aid the court in discovering what the testator actually did mean by what he said, and not to permit the court to speculate as to what he may or perhaps should have said, but in point of fact did not say. So it has been plainly held admissible to show by parol evidence that when a testator said "Home for Incurables for Men" and "Home for Incurables for Women," what he meant was the "Home for Incurables of Baltimore City" (*Home for Incurables v. Bruff*, 160 Md. 156, 176, 153 A. 403; *Jones on Evidence*, sec. 478; *Jarman on Wills*, p. 400 *et seq.*), but not to supply a name where the name of a legatee has been left blank. *Hawman v. Thomas*, 44 Md. 30, 45, 46; *Higgins v. Carlton*, 28 Md. 115. In *Stokeley v. Gordon*, 8 Md. 496, the testatrix devised a house and lot to "Anna Maria German, wife of Jonathan German." Anna Maria was the daughter and Catherine the wife of Jonathan German. Both claimed the devise, and the three judges who sat in the case each reached a different conclusion. One held the devise void for uncertainty, another that parol evidence was not admissible, but that from the face of the will the wife took, and the third, that parol evidence was admissible, and in connection with the language of the will indicated that the devise was to the daughter. That very diversity illustrates the difficulty in cases of that class in distinguishing a patent ambiguity, where parol evidence is inadmissible, from a latent ambiguity, where it is admissible to aid in discovering the testator's intention.

But where it is impossible to discover with reasonable certainty, either from the language of the will, or from the surrounding circumstances, the identity of the person the testator intended to describe as the object of the devise or legacy, it must necessarily fail for uncertainty. For it is essential to every valid testamentary disposition that there be a definite object of the testator's bounty, either pointed out on the face of the will, or certainly ascertainable through means provided by the will itself. *Jarman on Wills*, p. 400; *Miller, Construction of Wills*, p. 131.

Turning to the immediate facts, and assuming, without so deciding, that it would have been permissible to show that, when the testatrix said the heirs of "John Devenny," she actually meant the heirs of "William H. Devenny," it was not permissible to show that when she said the "heirs of John Devenny," she meant John Devenny and not his heirs.

There is nothing in the record to show with the requisite certainty that she actually did mean the heirs of William H. Devenny. There is nothing to show that she herself knew any of the Devennys. Her husband, for some reason not shown, had, until the death of William H. Devenny, contributed to his support, but he does not appear to have made any provision, by will or otherwise, for William H. Devenny's heirs, nor does it appear that he ever had any relations with John Devenny except to pay him, John Devenny, for the support of William H. Devenny, his father.

It is possible that the testatrix may have known of the correspondence between her husband and John Devenny, and assumed from that that he was the person to whose support Thomas A. Cassilly contributed, and that she intended by the legacy to discharge some obligation under which she believed her husband rested to that Devenny. But there is no evidence of such a mistake, other than the bare facts that her husband had contributed to the support of William H. Devenny, and that he was executor and trustee of the estate of William's brother,

Henry H. Devenny, and that William H. Devenny had contested his brother's will. It does not appear that under Henry's will, or as a result of the contest, Cassilly held any fund for William H. Devenny, or that he was under any legal obligation to contribute to his support.

It did appear that there was not listed in the city or telephone directories of Cincinnati any John Devenny other than the claimant, and it is highly improbable that the testatrix intended to bequeath the legacy to his heirs, and since one cannot be his own heir, it is manifest from the language of the will that she did not intend to bequeath it to the claimant. It is obvious that she did intend the legacy to go to the heirs of some Devenny, and also that she did not at that time even know as a fact that there were in existence any such heirs, for she provided that, if none were found within a year of her death, the legacy should lapse.

Upon those facts, the contention that the legacy was intended for the claimant must be definitely rejected, but whether, when she referred to the "heirs of John Devenny" she actually meant the heirs of "William H. Devenny," presents a much more difficult question. It was held in *Siegley v. Simpson*, 73 Wash. 69, 131 P. 479, that "parol evidence is admissible to show that a legacy 'unto my friend Richard H. Simpson' was intended for the testator's friend and associate Hamilton Ross Simpson, whose full name he did not know, and not for Richard H. Simpson, who was merely a casual acquaintance whom he had met but once in twenty years," and that conclusion is supported by cases cited in the opinion, and by other cases collected in notes in *Ann. Cas.* 1915B, 8, and in 47 *L. R. A. (N. S.)* 515; 69 C. J. 161. But in the case of *Siegley v. Simpson*, the will contained, in addition to the name, words of description, while in this case there is no such description to aid in the identification of the beneficiary, while there is in existence a person who, while not literally, nevertheless, substantially, answers the description of the *stirps*, the name of the claimant being John L., while that of the *stirps* given in the will is John.

There are in existence no persons who can be identified as the heirs of that John Devenny, because a living person has no heirs, and there is nothing in the will or the circumstances under which it was executed to show that the word "heirs" was used in any other than its ordinary literary sense.

She may possibly have intended the legacy to go to John Devenny's heirs at his death, but that construction is precluded by the direction that it shall only go to such heirs as should be located within a year of the testatrix' death, and the apparent intention that it should go to them directly and immediately. It is possible, too, that in referring to John Devenny she had in mind a son of the Alexander Devenny who lived in Pittsburgh, although it does not appear that he had a son. Or, assuming that she was mistaken in naming John Devenny as the *stirps* of the class to whom the legacy was bequeathed, it cannot with any certainty be said that she intended it to go to the heirs of William H. Devenny rather than to the heirs of Henry H. Devenny, who had also been her husband's friend, and who had appointed him executor and trustee of his estate. Upon those facts, to substitute for the name given by the testatrix another and a different name, for the purpose of correcting a presumed mistake, would be to change the will to fit the claimant, rather than to identify the claimant as the object of the legacy. The legacy is therefore, upon the facts shown in this case, void for uncertainty.

Some point was made of the fact that one of the executors requested the register of wills to write over the will of the testatrix the words, "Do not publish." There was no evidence, however, that the register complied with that request, but whether he did or did not is immaterial to any issue in this case, although we do not hold that, if the will was in fact suppressed, that fact could not be invoked as a ground for estoppel against the executors, should any legatees answering the description given in the will claim the legacy after the time limited therein.

For the reasons stated, the order appealed from must be reversed.

*Order reversed with costs, and remanded for further proceedings.*