MONMONIER *v.* MONMONIER, ET AL.

[No. 406, September Term, 1969.]

*Decided June 4, 1970.*

The cause was argued before HAMMOND, C. J., and MC-WILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Peter B. Turney* for appellant.

*F. Duncan Cornell* for appellee J. (Joseph) Carroll Monmonier.

No brief filed for appellee Edward Paul Swiss, Executor.

HAMMOND, C. J., delivered the opinion of the Court.

The contest before us is between two members of the Monmonier family, each known as J. Carroll Monmonier and each claiming to be the "John Carroll Monmonier" intended to take under paragraph 2 (a) of the will of their aged spinster cousin, Emma Lou Monmonier. Judge Haile, in the Circuit Court for Baltimore County, found that Joseph Carroll Monmonier (Jay) was the intended beneficiary, and his cousin, John Carroll Monmonier (John), has appealed.

Testimony that put the Court in the armchair of the testatrix came in by stipulation or without objection and showed the following: a Francis Monmonier is the common ancestor of the testatrix, Jay, and John. By his first wife he had a son, John Francis who had a son Louis who had another John Francis, who in turn had John, the appellant. John is thus a great, great grandson of the common ancestor and, as the testatrix puts it in her will, her "distant cousin." By his second wife the common ancestor, Francis, had two sons, Louis and Joseph Carroll. Emma Lou, the testatrix, is the daughter of Louis. Louis' brother Joseph Carroll had a son also named Joseph Carroll, who is the father of Joseph, the appellee. Thus Jay is the great grandson of the common ancestor Francis and, as the testatrix puts it in her will, her "second cousin" (perhaps more technically, or as in some places below Mason and Dixon's Line, her first cousin once removed).

Emma Lou, the testatrix, made her will in 1960 when she was eighty-five and died nine years later without immediate family. When she was thirty-three (1908) Jay, her cousin of the whole blood once removed, was born in Catonsville. He resided there much of his life and lived at 200 Beechwood Avenue when the will was made, as he now does. He has always used the name J. Carroll Mon-

monier, as did his father and his grandfather before him, and is known as Carroll to his family and friends. Neither he nor his father or grandfather used the name Joseph. His father and grandfather lived side by side in Catonsville and Emma Lou often visited his father there.

After he became an adult, Jay did not see Emma Lou for many years. Several months before the will was made, he visited her with another cousin, a visit occasioned by the death of a Monmonier relative. After that she sent him her father's watch, saying she wanted him to have it (he is a jeweler and watchmaker). Several months after the execution of the will—of which he then knew nothing—he had another pleasant visit with Emma Lou.

The appellant John and his wife and son visited Emma Lou more often during the years and they had some correspondence, including the exchange of Christmas cards. John worked for the B. & O. Railroad and resided on Birch Drive in Woodlawn when the will was made.

In her will Emma Lou Monmonier mentioned the name "John Carroll Monmonier" in three separate paragraphs. In paragraph 2 (a) after giving conditional life estates in her home property at Hydes, Maryland which failed, she gave and devised "said premises and the furniture contained therein to my second cousin, John Carroll Monmonier, *presently residing on Beech Avenue, Catonsville,* Maryland, to have and to hold as his property absolutely" (italics supplied).

In paragraph 3 the testatrix said "I give, devise and bequeath unto my *distant cousin,* John Carroll Monmonier (who is *presently working for the Baltimore and Ohio Railroad*) my 'School-house' property located on Sunshine Avenue, Baltimore County, Maryland * * * in Trust for his son Mark Monmonier * * *" (italics supplied).

In paragraph 4 Emma Lou bequeathed "to my cousin, John Carroll Monmonier, the sum of Two Thousand ($2,-000.00) Dollars."

Everyone agreed that John took under paragraph 3. Judge Haile found that the testatrix had in mind two

cousins, thought of both cousins as Carroll and that to her "her cousin Carroll, of Catonsville, and her cousin Carroll, the railroad man, were both named John Carroll Monmonier." He held that Jay was intended to take the home property under paragraph 2 (a) and John the $2,000 under paragraph 4. No appeal was taken from the holding as to paragraph 4, and we think Judge Haile was right as to paragraph 2 (a).

John urges that there is a latent ambiguity in the will and therefore the testimony of the scrivener and of John and his wife, which he says shows that the testatrix intended him to take under paragraph 2 (a) of the will should be considered. A latent ambiguity exists "where the words of the instrument are apparently definite and specific, but are susceptible of application with equal certainty to each of several subjects or objects." E. Miller, *Construction of Wills,* § 42, at 122. If there is a latent ambiguity, parol evidence is admissible to show intent. *Bradford v. Eutaw Savings Bank,* 186 Md. 127, 136. We see no latent ambiguity in the will and therefore parol evidence to show intent was inadmissible. We add that had the testimony as to intent of the scrivener and of John or his wife been admissible, it would not, in our view, prove that John was the intended beneficiary under paragraph 2 (a) of the will.[1]

The case essentially is not too different from *Douglas v. Blackford,* 7 Md. 8, where the Court found no ambiguity and identified a farm devised by analysis of the facts about the farm mentioned by the testator. The reason we see no latent ambiguity in the present will is be-

---

1. The scrivener said that the testatrix told him that "he was the one who worked for the B. and O. Railroad and was the father of Mark," and that at no other time did she mention any other male Monmonier, other than Mark or John Carroll. But the scrivener also said that the will was prepared completely in accordance with the instructions of the testatrix. "She was a maiden lady and insisted that the will be prepared just the way I prepared it."

The testimony of John and his wife was only that long before the will was made, Emma Lou Monmonier asked casually on one occasion if he would like the Hydes property and on another said something about having it to help with Mark's education. .

cause it is clear to us that the testatrix had in mind two different beneficiaries. Thinking that both her cousins were named John Carroll, she undertook to identify them by the closeness of their family relationship to her and by a place of residence on the one hand and an occupation on the other. Joseph was a closer cousin of the whole blood and he lived in Catonsville, an area she knew well and with which she identified him from his youth, and he is described by reference to these facts in paragraph 2 (a), with no reference to any child. John is the more distant cousin of the half blood and he worked for the B. & O. Railroad. He is identified in paragraph 3 by reference to these facts and the further fact that he is the father of Mark. We find the intention of the testatrix to be clear.

*Decree affirmed, with costs.*