522 A.2d 377

**Miriam E. EMMERT, Pers. Rep. of the Estate of George Gordon Roberts, Sr.**

v.

**Ruth R. HEARN et al.**

No. 70 Sept. Term, 1986.

Court of Appeals of Maryland.

March 23, 1987.

William B. Dulany (Jeffrey D. Scott and Dulany, Parker & Scott, on the brief), Westminster, for appellant.

Nancy G. Fax (Norman M. Glasgow, Susan H. Sarch and Wilkes, Artis, Hedrick & Lane, Chartered, on the brief), Rockville, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

MURPHY, Chief Judge.

This case concerns whether, under the will of George Roberts, the bequest of "all my personal property" includes intangible as well as tangible personalty.

### I

The testator died in 1981, survived by seven of his eight children. His wife had predeceased him in 1970 and a son, Richard, had died in 1971, leaving one child, Brian. The testator's will, executed in 1977, contained the following pertinent provisions:

"FIRST: I hereby direct my Personal Representatives hereinafter named to pay all of my just debts, and funeral expenses....

SECOND: I bequeath all my personal property to my surviving children to be divided equally.

THIRD: I devise all my real property to my daughter, MIRIAM ELEANOR EMMERT for the term of her life, in trust, to be known as the 'TESTAMENTARY TRUST.'

A. The net income from said 'TESTAMENTARY TRUST' shall be divided equally and paid to my surviving children.

D. The said 'TESTAMENTARY TRUST' shall terminate upon the death of my daughter, MIRIAM ELEANOR EMMERT, the Trustee and the principal of the Trust[ ], the remaining real estate or the proceeds from the sale of the real estate, shall be transferred to the 'INTERVIVOS TRUST' established prior to my death.... After said transfer of principal from the said 'TESTAMENTARY TRUST' to the said 'INTERVIVOS TRUST,' the Trustee of the 'INTERVIVOS TRUST' ... shall have the absolute power and discretion to sell the transferred real estate and shall then place the proceeds of such sales in the 'INTERVIVOS TRUST.'

FOURTH: All the rest, residue and remainder of my estate, real and personal, of every nature and description, and wherever situate, including any property over which I may have a general power of appointment, I give, devise and bequeath unto the 'INTERVIVOS TRUST'...."

At the time of Roberts' death, his estate was valued at approximately $750,000. Miriam E. Emmert, the testator's daughter and the personal representative of his estate, filed inventories showing real property appraised at $425,000, tangible personal property worth approximately $2,500, and intangible personal property, including corporate stocks, bonds, and bank accounts, appraised at $324,000.

As personal representative, Emmert filed a petition for declaratory relief in the Circuit Court for Carroll County. The petition alleged that the phrase "personal property" in Paragraph Second was ambiguous when considered in light of other provisions of the will; that the testator intended the phrase to mean only tangible personal property; that the existence of the residuary clause in Paragraph Fourth indicated the testator's intention that some portion of his assets would remain and pass under it; that if "personal property" were construed to include intangible personal property, then nearly one-half of the testator's estate would pass under the bequest of Paragraph Second directly to the

surviving children and not into the *inter vivos* trust under Paragraph Fourth [1]; and that such a result would be contrary to the testator's desire to treat his children and grandchildren equally, as evidenced by the distributive schemes of the *inter vivos* and testamentary trusts.

The trial court (Nissel, J.) concluded that "in determining the quantity of interest the testator intended to pass and to which beneficiaries the interest is to pass" a latent ambiguity existed as to whether "personal property" in Paragraph Second included intangible as well as tangible personal property. The court held that extrinsic evidence was therefore admissible to "clear the ambiguity." Over objection,[2] it admitted the testimony of the personal representative, one of the testator's children, and the deposition of the attorney who drafted the will, all to the effect that the testator intended "personal property" in Paragraph Second to mean only tangible personal property. The court found that the words "personal property," as used in Paragraph Second, applied only to tangible personalty and that the intangible personal property passed under Paragraph Fourth of the will into the *inter vivos* trust.

The Court of Special Appeals, in an unreported opinion, reversed the judgment of the circuit court. It recognized the rule that extrinsic evidence and declarations of intention are permitted to determine the testator's intention where a latent ambiguity exists in a will. But it found that the words of the will were clear and that no such ambiguity existed. Relying upon our cases, the court said that the words "personal property," without more, include every form of personal property, both tangible and intangible;

---

1. The testator established an *inter vivos* trust in 1971. According to its provisions, the interest or income was to be equally distributed among the testator's living children. Upon the death of his last surviving child, the trust corpus was to be divided equally among the testator's grandchildren, *per stirpes.*

2. Four of the testator's children took the position that the language of the will was unambiguous and extrinsic evidence of the testator's intent was therefore inadmissible.

and that where, as here, the will was drawn by an attorney, the words employed must be given their accustomed technical meaning. In so concluding, the court recognized that Paragraph Second created an inequality among the legatees because it excluded a deceased child's issue from sharing in the distribution of the personal property. It said, however, that it was not free to interpret the will so as to achieve equality among issue, and that because there was no latent ambiguity, the trial court was in error in admitting extrinsic evidence of the testator's intention. We granted certiorari to consider the significant question raised in the case.

## II

In construing a will, the paramount concern of the court is to ascertain and effectuate the testator's expressed intent. *Leroy v. Kirk,* 262 Md. 276, 279, 277 A.2d 611 (1971); *Shellady, Inc. v. Herlihy, Ex'r,* 236 Md. 461, 471, 204 A.2d 504 (1964); *Marty v. First Nat'l Bk. of Balto.,* 209 Md. 210, 216, 120 A.2d 841 (1956). The testator's intent must ordinarily be gathered from the four corners of the will, *Reedy v. Barber,* 253 Md. 141, 148, 251 A.2d 882 (1969), with the words of the will given their "plain meaning and import." *Leroy, supra,* 262 Md. at 280, 277 A.2d 611; *Marty, supra,* 209 Md. at 217, 120 A.2d 841. However, words having legal significance will be construed in that sense unless the will clearly indicates otherwise. *Patchell v. Groom,* 185 Md. 10, 15, 43 A.2d 32 (1945). But whether the words of the will are given their ordinary or legal meaning,

"[e]xtrinsic evidence should not be admitted to show that the testator meant something different from what his language imports.... What he meant to say must be gathered from what he did say."

*Fersinger v. Martin,* 183 Md. 135, 138, 36 A.2d 716 (1944).

Looking first to the plain meaning of "personal property," Webster's New International Dictionary (1971), p. 1687, defines it as "an estate or property other than real property consisting in general of things temporary or mova-

ble including intangible property." Black's Law Dictionary (5th ed. 1979), p. 1096, defines the term to mean "all property other than real estate." Thus, there is no distinction between the ordinary and the legal meaning of "personal property," both of which encompass tangible and intangible property. Furthermore, the general rule applied consistently in our cases is that, absent some indication from the will to the contrary, bequests of "personal property" are to be construed broadly. As we stated in *Cameron v. Frazer*, 187 Md. 368, 50 A.2d 243 (1946):

> "[T]he words 'all my personal property,' without any limiting context, may be all-inclusive; they may include personal property of every kind, tangible or intangible, goods and chattels or choses in action, owned when the will is made or thereafter acquired."

*Id.* at 373, 50 A.2d 243. *See also Leroy v. Kirk, supra,* 262 Md. at 281, 277 A.2d 611; *Frick v. Frick,* 82 Md. 218, 222, 33 A. 462 (1895); *Dalrymple v. Gamble,* 68 Md. 523, 528–29, 13 A. 156 (1888).

In *Dalrymple*, for example, the testator bequeathed to a certain legatee "all my personal property," worth about $100 when he executed the will. Between the time of the execution of the will and the testator's death, a brother of the testator died intestate; the testator's distributive share of his deceased brother's personal estate was worth approximately $30,000. We there held:

> "[T]he terms in this will, 'all my personal property,' are sufficient to pass the testator's distributive share of his brother's estate, unless their obvious meaning, can, upon good and legal grounds be put aside or restricted, and held not to embrace this property. There is however nothing upon the face of the will to enable the court to give it any such restricted construction. The words are as comprehensive as any that could be used. He does not say 'my ranch and all my personal property thereon' nor 'all my personal property in California.' He makes no enumeration of articles, nor any bequest to any one else, so as to give the court the slightest clue or ground for

relying on the rule *'ejusdem generis'* or *'noscitur a sociis.'* "

*Id.* at 528–29, 13 A. 156.

We have, on occasion, found that the doctrines of *noscitur a sociis* and *ejusdem generis* [3] may qualify the bequest of personal property so as to render it less than all-inclusive. In *Leroy v. Kirk, supra,* 262 Md. at 283, 277 A.2d 611, we stated that

"[t]he maxims mean that the meaning of a word is or may be known from the accompanying words so that, under the rules, general and specific words, capable of analogous meaning, when associated together, take color from each other, so that general words are restricted to a sense analogous to less general (citation omitted)."

In *Leroy,* the testator bequeathed "all of my personal property, including my automobile, boat and the contents of my house and outbuildings...." We determined that the phrase following "personal property" in the bequest restricted it, by example, to tangible personal property. Thus, the bequest did not include stock certificates worth $150,000 that were mailed to the testator's house shortly before she died. *Id.* In *Cameron v. Frazer, supra,* 187 Md. at 371, 50 A.2d 243, a provision of the testator's will left to a hospital "my home property *located* at Earlesville, Maryland, including all *furniture* therein and *other* personal property *located on the premises* " (emphasis added in *Cameron* ). We said:

"These limiting words, like the horse, implements and other goods and chattels covered by them are of the earth, earthy. They suggest tangible property, goods and chattels, which have a 'local habitation,' not securities or other choses in action, especially when securities and choses in action are specifically bequeathed in three subsequent items...."

---

**3.** *Noscitur a sociis* literally translates as "it is known from its associates," Black's Law Dictionary (5th ed. 1979), p. 956, and *ejusdem generis* as "of the same kind, class, or nature." *Id.,* 33 A. at 464.

*Id.* at 373, 50 A.2d 243. Accordingly, we held that certain savings bonds, bought by the testator after he executed the will and found in a desk drawer in his home, were not part of the personal property passing to the hospital. *See also Frick v. Frick, supra,* 82 Md. 218, 33 A. 462 (clause in will leaving the "balance of my estate" restricted testator's bequest of "all my personal property" so that it did not include proceeds from the sale of a farm.)

### III

■ Turning to the will at issue here, we find, as we did in *Dalrymple, supra,* that there is nothing on the face of the will that qualifies or limits the bequest of personal property. There are no examples in Paragraph Second of articles bequeathed by the testator to illustrate the type or nature of the personal property given to the legatees, nor any description or location of the personal property. The personal representative argues that the existence of the residuary clause, whereby "all the rest, residual and remainder of ... [the testator's] estate, real and personal, of every nature and description, and wherever situate" would pass into the *inter vivos* trust, indicates the testator's intention to distinguish between tangible and intangible property. However, the residual personal property passing under this clause is no more clearly delineated than is the personal property in Paragraph Second; the phrase "of every nature and description, and wherever situate," by itself, is simply insufficient to distinguish intangible from tangible personal property. Moreover, residuary clauses are used frequently in wills and serve generally to insure that the testator will not die intestate as to any possible portion of the estate as would occur, for example, if property and interests are not otherwise disposed of, or if bequests or devises fail. *See generally* 4 W. Bowe & D. Parker, *Page on the Law of Wills* §§ 33.46–.62 (rev. ed. 1961). We must therefore conclude that the language used in Paragraph Second of the will is unambiguous on its face.

That a latent ambiguity does not exist in the provisions of Roberts' will is equally clear. Such an ambiguity occurs

when "the language of the will is plain and single, yet is found to apply equally to two or more subjects or objects." *Darden v. Bright*, 173 Md. 563, 569, 198 A. 431 (1938). Extrinsic evidence is generally admissible to resolve a latent ambiguity. *Monmonier v. Monmonier*, 258 Md. 387, 390, 266 A.2d 17 (1970); *Bradford v. Eutaw Savings Bank*, 186 Md. 127, 136, 46 A.2d 284 (1946); *Fersinger v. Martin, supra*, 183 Md. at 138–39, 36 A.2d 716; *Darden v. Bright, supra*, 173 Md. at 569, 198 A. 431; *Cassilly v. Devenny*, 168 Md. 443, 449, 177 A. 919 (1935). Indeed a latent ambiguity is "not discoverable until extrinsic evidence is introduced to identify the beneficiaries or the property disposed of by will, when it is developed by such evidence, either that the description in the will is defective, or that it applies equally to two or more persons or things." 4 W. Bowe & D. Parker, *Page on the Law of Wills* § 32.7, p. 255 (rev. ed. 1961).[4]

There is no defective description of the property that passes under Paragraph Second of the will as there was, for example, in *Shellady, Inc. v. Herlihy, Ex'r, supra*, 236 Md. at 470–71, 204 A.2d 504. There, the testator bequeathed 104 shares of Class "B" stock in a corporation. Upon his death, however, it was ascertained that he owned 104 shares of Class "A" stock in that corporation, but no Class "B" shares. The latent ambiguity allowed the admission of extrinsic evidence to clarify the mistake in the property description. *See also Home for Incurables v. Bruff*, 160 Md. 156, 153 A. 403 (1931); *Scarlett v. Montell*, 95 Md. 148, 51 A. 1051 (1902); *Littig v. Hance*, 81 Md. 416, 32 A. 343 (1895). There is similarly no indication that the property bequeathed by Roberts applies equally to two or more persons or things. *See, e.g., Monmonier v. Monmonier*,

---

4. A patent ambiguity is one that is apparent on the face of the will itself, as, for example, when different clauses of a will dispose of the same plot of land to different devisees. *See* 4 W. Bowe & D. Parker, *Page on the Law of Wills* § 32.7, p. 255 (rev. ed. 1961). A patent ambiguity must be resolved not from extrinsic evidence, but from the four corners of the will itself. *Hawman v. Thomas*, 44 Md. 30, 31 (1875). That no patent ambiguity exists in this case is conceded.

*supra,* 258 Md. at 387, 266 A.2d 17. Moreover, the unequal treatment of the grandchildren resulting from the testator's intangible personal property passing directly to his surviving children does not, of itself, create a latent ambiguity. As we stated in *McCurdy v. Safe Deposit & Trust Co.,* 190 Md. 67, 69, 57 A.2d 302 (1948), "[A]n inequality cannot influence a court in its duty to find out what a testator meant by his will. . . ." Although inequality among beneficiaries may be considered when the testator's intention is uncertain, that is not the situation presented by this case. Extrinsic evidence of the testator's intent should therefore have been excluded.

If the language of the will is clear and no latent ambiguity exists, the court's role in the construction of the will is at an end. *Fersinger v. Martin, supra,* 183 Md. at 140, 36 A.2d 716. Absent the proffered extrinsic evidence and any indication to the contrary from the will itself that the testator intended anything other than all his personal property to pass under Paragraph Second of his will, we hold that the bequest in that paragraph is all-inclusive. Accordingly, the testator's intangible personal property will pass to his surviving children and not into the *inter vivos* trust through the residuary clause of Paragraph Fourth of his will.

JUDGMENT AFFIRMED, WITH COSTS.