40 A.3d 1105

**Estate of Steven CLICK, et al.**

**v.**

**Estate of Joanne CLICK, et al.**

**No. 2430, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

March 30, 2012.

Wayne T. Kosmerl (Maria W. McKenna, Council, Baradel, Kosmerl & Nolan, PA, on the brief), Annapolis, MD, for appellant.

Susan Mays, Glen Burnie, MD, for appellee.

Panel: EYLER, JAMES R., WATTS, and SALMON, JAMES P. (Retired, Specially Assigned), JJ.

WATTS, J.

Appellants, the Estate of Steven Click and Bret W. Click, appeal the grant of summary judgment and declaratory judgment in favor of appellees, Elizabeth Smith, Rebecca Maberry, and Teresa Talley,[1] as to the construction of the Last Will and Testament of Joanne Click.[2] Appellants noted an appeal raising two issues,[3] which we have slightly rephrased and reordered as follows:

I. Whether the circuit court erred in finding that the provisions of the third and fifth paragraphs of Joanne's Last Will and Testament were unambiguous?

---

**1.** The Estate of Joanne Click is an appellee in this case. The Estate is an uninterested party and did not file a brief.

**2.** Due to the common surname, we will refer to the parties by their first names as needed.

**3.** Appellants phrased the issues thus:

I. Did the trial court erroneously find that the provisions of paragraphs THIRD and FIFTH of Joanne Click's Last Will and Testament were unambiguous.

II. Did the trial court erroneously fail to consider the "surrounding circumstances" when construing the Last Will and Testament of Joanne Click.

II. Whether the circuit court erred in not considering extrinsic evidence of the surrounding circumstances concerning Joanne's intent?

We answer the first question in the affirmative and shall, therefore, reverse. As a result of the reversal on Issue I, we shall not address Issue II.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 30, 2009, Joanne died testate. Joanne was survived by: one son, Steven William Click;[4] one grandson, Bret William Click (Steven's son), a minor;[5] three grand-daughters, Elizabeth Smith,[6] Rebecca Maberry, and Teresa Talley[7] (Frank's daughters); and one sibling, Warren Walls. Dated October 25, 1999, Joanne's Last Will and Testament (the "Will")[8] provides, in pertinent part, as follows:

I, JOANNE CLICK, a resident of EDGEWATER, MARY-LAND, declare that this is my Last Will and Testament.

FIRST

I hereby revoke all previous Wills and Codicils that I have made.

\* \* \*

THIRD

I am not married and have no spouse.

I give all my jewelry, clothing, household furniture and furnishings, personal automobiles and other tangible articles of a personal nature, or my interest in any such property

---

4. Joanne's other son, Steven's brother and appellees' father, Frank E. Click, Jr., predeceased her.

5. In the record, Bret is spelled as both "Bret" and "Brett." For consistency, we shall use "Bret" throughout the opinion.

6. Appellee Elizabeth Smith is also known as Elizabeth Tennant.

7. Appellee Teresa Talley is also known as Teresa Arnaud and Theresa Arnaud.

8. It is undisputed that Joanne prepared the Will, without the assistance of an attorney, using a computer program stole by a retail store.

not otherwise disposed of by this Will or in any other manner together with:

(a) any insurance on the property,

(b) any personal life insurance proceeds,

(c) any registered retirement savings plans, registered retirement income funds, pension plans and annuities,

(d) any income tax deferred assets,

to my one and only child: STEVEN WILLIAM CLICK.

All references in this Will to "my child" or "my children" include any and all children hereinafter born to or adopted by me.

\* \* \*

FIFTH

To BRET WILLIAM CLICK my GRANDSON, I LEAVE THE SUM OF $1000.00

To ELIZABETH TENNANT my GRAND[D]AUGHTER, I LEAVE THE SUM OF $1000.00

To REBECCA MABERRY my GRAND[D]AUGHTER, I LEAVE THE SUM OF $1000.00

To THERESA ARNAUD my GRAND[D]AUGHTER, I LEAVE THE SUM OF $1000.00

To WARREN WALLS my BROTHER, I LEAVE THE SUM OF $5000.00

No other special gifts are left, any assets not directly disposed of in this Will shall be given to the surviving members in order of succession.[9]

---

9. Joanne had previously executed a will on October 11, 1988, (the "1988 Will") which was revoked by the Will dated October 25, 1999. The 1988 Will provided, in pertinent part, as follows:

### ITEM SECOND

I give and bequeath unto my son, STEVEN CLICK, all of my tangible personal property of domestic or personal use, together with all insurance policies thereon.

### ITEM THIRD

On December 10, 2009, approximately two and one-half months after Joanne's death, Steven, died. Steven's son, Bret, a minor, was Steven's heir under his Last Will and Testament. On February 19, 2010, Walls, Joanne's personal representative, filed a Petition for Instructions in the Orphan's Court for Anne Arundel County. In the Petition, Walls requested that the Court "give instructions as to the meaning of the Last Will and Testament of Joanne Click dated October 25, 1999 in general" and to the following clause of the fifth paragraph: "No other special gifts are left, any assets not directly disposed of in this Will shall be given to the surviving members in order of succession." In addition to requesting that the Court instruct as to the meaning of the fifth paragraph, Walls requested that the court issue instructions as to the distribution of Joanne's real property, asking, in pertinent part, as follows:

10. The Will was prepared by [Joanne] with the use of a computer program that provided a form last will and testament. The said Will does not contain a residuary clause.

11. [Joanne] died testate owning real property located at 1745 Tacoma Road, Edgewater, Anne Arundel County, Maryland.

12. STEVEN WILLIAM CLICK resided in the aforesaid real property with his mother, Joanne Click, for several years prior to her death.

WHEREFORE, your Petitioner prays:

a. I give and bequeath unto my granddaughter, ELIZABETH ANN LAWSON, the sum of $1,000.

b. I give and bequeath unto my granddaughter, REBECCA JOANNE CLICK, the sum of $1,000.

c. I give and bequeath unto my granddaughter, TERESA LYNN CLICK, the sum of $1,000.

d. I give and bequeath unto my friend, LARRY M. FLETCHER, the sum of $1,000.

e. I give and bequeath unto my mother, MARIE FERRY, if she survives me, the sum of $1,000.

### ITEM FOURTH

I give and bequeath and devise all the rest and residue of my estate unto my son, STEVEN CLICK.

 A. That this Court issue instructions as to the distribution of the real property of [Joanne.]

On March 12, 2010, Walls filed an Amended Petition for Instructions and for Declaratory Judgment in the Circuit Court for Anne Arundel County.[10] The amended petition added the following defendants: the Estate of Steven Click, Amy Hardesty as parent and next friend of Bret, and Smith, Maberry, and Talley. The amended petition adopted and incorporated the original petition, and added a count for declaratory judgment, in which Walls alleged the following:

 4. That the language contained in the Last Will and Testament of Joanne Click may be subject to more than one interpretation regarding the distribution of the testatrix's property.

 5. That the Defendants are Interested Persons of The Estate of Joanne Click.

 6. That the Defendant, The Estate of Steven Click, has taken a position as to how the testatrix's property must be distributed pursuant to The Last Will and Testament of Joanne Click, while Defendants, Elizabeth A. Click Smith, Rebecca J. Click Maberry and Teresa Arnauld Talley, have made known a second conflicting position regarding the distribution of the same property.

On April 21, 2010, the Estate of Steven Click filed an answer. On April 30, 2010, Bret filed an answer. In their answers, as to the third paragraph of the Will, the Estate of Steven Click and Bret stated: "The Will of Joanne Click instructs that property not otherwise disposed of in the Will shall be distributed to Steven Click. The 'property not otherwise disposed of' includes Joanne Click's real property. As such, the real property subject to the above[-]captioned action should be distributed to [ ] Steven Click." As to the fifth paragraph of the Will, they stated: "Joanne Click had two children, Frank Click, Jr. and Steven Click. Frank Click, Jr.

---

**10.** On February 25, 2010, the Orphan's Court for Anne Arundel County issued an Order permitting Walls to file the petition in the Circuit Court for Anne Arundel County.

predeceased his mother, Joanne Click. The only 'surviving member[ ] in order of succession' is Steven Click. Assuming another party to this action contends that Joanne Click's real property is 'not disposed of in the Will,' this Court should instruct that the real property be distributed to Steven Click." Both requested that the circuit court order distribution of Joanne's real property to Steven.

On June 17, 2010, Smith, Maberry, and Talley filed an answer to the amended petition, arguing that "the intent of the Will . . . is to distribute the rest and residue of this estate equally among the legatees identified therein."

On September 15, 2010, appellants filed a Motion for Summary Judgment and Request for Hearing. In the motion, appellants requested that the third paragraph of the Will be read as instructing distribution of Joanne's real property to Steven and that the fifth paragraph be read as instructing that "Joanne Click's residuary estate shall be distributed to Joanne Click's surviving members in order of succession which is declared to mean Joanne Click's only surviving child at the time of her passing, Steven Click." In the memorandum in support of the motion, appellants argued that Joanne intended to leave her real property to Steven because Joanne "was appreciative of the efforts that . . . Steven [ ] put toward Joanne Click and her needs[,]" whereas Joanne's relationships with Smith, Maberry, and Talley were "strained" and "caused her great discontent." Appellants argued that Joanne's intent was expressed within the Will and, alternatively, by the surrounding circumstances at the time the Will was made. Appellants attached affidavits from various of Joanne's friends, in which each affiant attested that Joanne intended to leave her house to Steven, and most attested that Joanne's relationships with Smith, Maberry, and Talley were strained and damaged.

On October 4, 2010, Smith, Maberry, and Talley filed an answer to appellant's motion for summary judgment and filed their own motion for summary judgment. In the answer and motion, Smith, Maberry, and Talley argued as follows:

3. This cases presents a strict legal question—to determine the meaning of the will from its four corners.

4. There is no ambiguity in the will, and Defendants Elizabeth Smith, Teresa Talley and Rebecca Maberry are entitled to a declaration of the construction of the will as a matter of law.

\* \* \*

WHEREFORE, Defendants Smith, Talley and Maberry pray this Honorable Court will declare that the meaning of the Will which is the subject of this litigation is to distribute the rest and residue of this estate equally among the legatees identified therein.

On October 22, 2010, appellants filed a reply to Smith, Maberry, and Talley's answer and an opposition to Smith, Maberry, and Talley's motion for summary judgment. Appellants argued that Maryland law "dictates that Joanne Click's will must be construed to reflect her intent." Appellants contended that the construction of the Will urged by Smith, Maberry, and Talley ignored Joanne's "intent as expressed in the four corners of the Will and even further ignore[d] the surrounding circumstances that existed at the time that Joanne Click executed her Will." On October 29, 2010, appellants filed a supplement to their motion for summary judgment. The supplement incorporated the 1988 Will. Appellants argued that "[c]onsidering the 'surrounding circumstances,' the two Wills taken together indicate that Joanne Click intended that her granddaughters, Smith, Talley and Maberry, were only ever to receive a specific bequest, that is, $1,000."

On November 29, 2010, the circuit court held a motions hearing. During the hearing, the following exchange occurred between the circuit court and appellants' counsel:

THE COURT: But ... if the words that the testator used were, you know, crystal clear and sufficient at the same time the—or at some subsequent time the testator said something else extrinsic, would we not be bound to basically apply the words if they're not ambiguous?

[APPELLANTS' COUNSEL]: If they're not ambiguous. In this case, [Walls] has filed the petition asking the Court to construe the will suggesting that the will can be—is either ambiguous or can be interpreted in more than one way. So we are stuck in the category of the words in the will being ambiguous.

\* \* \*

THE COURT: Surviving, members, succession, those are all legal terms.

[APPELLANTS' COUNSEL]: Legal terms. Yes.

THE COURT: So why—why would I need extrinsic evidence in order to interpret the meaning of those legal terms?

[APPELLANTS' COUNSEL]: If the Court determines that there's no ambiguity in the will at all, then we're not turning to extrinsic evidence. However, in this situation we have a petitioner [Walls] that has indicated that the will can be interpreted in more than one way, meaning we have a will that is ambiguous. So we have to figure out what the testator intended.

In contrast, counsel for Smith, Maberry, and Talley argued as follows:

Let me start by saying that just because the Petitioner [Walls] alleged ambiguity does not mean that one exists. Paragraph 3 is not the least little bit ambiguous.... As far as paragraph 5, again, not ambiguous.

At the end of the hearing, the circuit court advised counsel, as follows:

I am going to provide a written decision, but I'll orally advise counsel that I don't think that the word "such"—the phrase "such property" is ambiguous in the earlier paragraph, I guess, Paragraph 3 of the '99 will. I think it—it clearly modifies or refers to the prior recitation of personal property and that means, to me, then, that the only remaining question of interpretation of the will is what does "surviving members in order of succession" mean. And that is very much a legal phrase. It's not a—a phrase of plain English usage in the community.

And, therefore, the Court thinks that its interpretation is very much a matter of law and not a matter of gathering the lay person's intention from ambiguous phrases in the—in the will.

\* \* \*

So the Court will, based on the summary judgment, provide the declaratory relief as to the legal meaning of the term "surviving members in order of succession," and I'll provide that opinion within a week.

On November 30, 2010, the circuit court issued an Order granting appellants' summary judgment in part and declaratory judgment, with instructions as to Joanne's real property. The Order stated, in pertinent part, as follows:

**ORDERED,** that the Motion for Summary Judgment be and is hereby **GRANTED** in part; and the interested persons' motion is granted in full as follows:

**ORDERED AND DECREED,** that the Last Will and Testament of Joanne Click is hereby declared to be read as follows:

A. Paragraph THIRD instructs that Joanne Click's specified personal property is to be distributed to Joanne Click's son, Steven Click.

B. Paragraph FIFTH instructs that Bret Click, Elizabeth Tennant, Rebecca Maberry and Theresa Arnaud are to receive a specific bequest of $1,000.00 each.

C. Paragraph FIFTH instructs that Warren Walls is to receive a specific bequest of $5,000.00.

D. Paragraph FIFTH includes a residuary clause by stating "any assets not directly disposed of in this Will". Paragraph FIFTH instructs that Joanne Click's residuary estate including real property shall be distributed to Joanne Click's surviving members in order of succession which is hereby declared to mean her surviving issue per stirpes[.]

On November 30, 2010, the circuit court issued a written Opinion as to the motions for summary judgment. The Opinion stated, in pertinent part:

Steven Click had resided with his mother for a number of years prior to her death and, in a prior will, had been bequeathed the sole ownership of her home.

In his motion for summary judgment, Steven Click contends that his mother's 1999 will was ambiguous and, based on circumstantial evidence, that the ambiguity should be resolved with the inference that she intended again to bequeath him sole ownership of the real estate. The other interested parties disagree.

<div align="center">* * *</div>

Steven Click's estate initially contends, as to the THIRD paragraph of the Will, that "such property" is ambiguous and should be construed to have the word "such" refer to real estate, rather than personal property. Alternately, they contend that the word "such" might be construed to mean "all," so as to distribute the entire residuary estate in the third paragraph to Steven Click.

The undersigned finds that this ambiguity argument is mistaken. No citation of legal authority is required for this court to find that "such property" grammatically refers to the property previously mentioned in the same paragraph—that is, personal only.

Moreover, in oral argument, Steven Click's counsel acknowledged that the last sentence in the FIFTH paragraph may be understood to constitute the residuary clause, disposing of real estate. Likewise, the EIGHTH paragraph acknowledges the existence of the residuary clause.

The second ambiguity urged by Steven Click's estate states the term "any assets not directly disposed of in this Will shall be given to the ***surviving members in order of succession.***" (Emphasis added.) Steven Click's argument for the ambiguity of the emphasized phrase is based completely on evidence extrinsic to the Will. However, counsel has acknowledged in oral argument that such extrinsic evidence would not be admissible if the Will's terms are not ambiguous.

This court finds that the term "surviving members in order of succession" is not ambiguous, even though it may not be common English currently in plain usage. Steven Click's estate contends that the term "surviving members" should be construed to mean that the entire estate would go to Steven Click because he was the descendant's "one and only child." This, however, disregards the long-standing Maryland rule as to construction of wills and other documents that the court—must give full effect to all "technical words [in the document] unless from subsequent inconsistent words it is made perfectly clear that the testator meant otherwise." *Clarke v. Smith,* 49 Md. 106, at 117 (1878).

Examining the will as a whole, this court finds that the testator's use of the phrase "surviving members"—in the plural—does not refer to a singular family member—that is, Steven Click. Maryland cases make clear that a will's reference to a group of family "members" should be construed as *per stirpes,* rather than *per capita* unless a contrary intention is expressed. Similarly, Maryland cases have found that the use of the term "in succession" implies inheritance *per stirpes* and not *per capita.* Here, where the testator used both terms together, this court finds that it is unmistakable that she intended per stirpes distribution to her children or their survivors per stirpes. See *Clarke v. Clarke,* 222 Md. 153, at 157–158 [159 A.2d 362] (1960) which held, after an extensive review of precedents back to the English common law, that Maryland should follow the "Restatement, Property, Future Interests, Sec. 303", stating:

> "When a conveyance creates a class gift by a limitation in favor of a group described as the 'issue of B,' or as the 'descendants of B,' * * * then, unless a contrary intent * * * is found * * * distribution is made to such members of the class as would take, and in such shares as they would receive, under the applicable law of intestate succession if B had died intestate.... "

Similarly, Maryland's Court of Appeals in *Weller v. Sokol,* 271 Md. 420, at 427 [318 A.2d 193] (1974) held

> "in the absence of an expression of contrary intent, the direction that a distribution be made *per stirpes* will

result in the distribution which would have been made under the statute of distribution, was amplified in *Sollers v. Mercantile–Safe Deposit & Trust Co.,* [262 Md. 606, 278 A.2d 581 (1971) ] at 610–11, to the end that descendants will take in the manner provided by the statute of descent and distribution in effect at the death of the testator, just as if the person identified as the stock had died intestate at the time of distribution. . . ."

The *Sokol* court also found that a testator's use of the term "**succession**" with "divided . . . among the issue and descendants of such of my children as may have died leaving lawful issue him or her surviving per stirpes . . . just as if a child had died intestate on the date of termination owning a share of the corpus and leaving descendants surviving." *Sokol* at 432 [318 A.2d 193].

For all of these reasons, the court will grant Steven Click's motion for summary judgment in part—that is, it will provide the declaratory relief construing the will. But the court will also deny it in part—that is, the court does not adopt the construction urged by Steven Click's estate. The court will grant the interested persons' motion for summary judgment.

(Footnote omitted) (alterations, emphasis, and omissions in original). On December 29, 2010, appellants noted an appeal.

## DISCUSSION

 The parties' contentions are as they were in the circuit court. We need not reiterate them.[11]

### (1) Standard of Review

In reviewing a grant of summary judgment under Md. Rule 2–501(f), we review the circuit court's decision to grant a

---

11. Smith, Maberry, and Talley initially contend that "[a]ppellants did not preserve the questions presented for review by this Court" pursuant to Maryland Rule 8–131(a). This contention is without merit. Because the issues of ambiguity and the consideration of surrounding circumstances, or extrinsic evidence, were both clearly raised in and decided

motion for summary judgment *de novo. Bonfiglio v. Fitzger-ald,* 197 Md.App. 327, 337, 13 A.3d 812 (2011) (citations omitted). Our review is "two-fold," in that we determine first whether there is a genuine dispute of material fact, and second, if there is no genuine dispute of material fact, whether the party is entitled to judgment as a matter of law. *Id.* (citations omitted). "In order for there to be disputed facts sufficient for us to hold that granting summary judgment in appellee's favor was error, there must be evidence on which the jury could reasonably find for appellant." *Benway v. Md. Port Admin.,* 191 Md.App. 22, 46, 989 A.2d 1239 (2010) (citation omitted). In reviewing the facts, "we construe the facts properly before the court and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party[.]" *Id.* (citation omitted).

In *Catalyst Health Solutions, Inc. v. Magill,* 414 Md. 457, 471–72, 995 A.2d 960 (2010), the Court of Appeals stated:

> The standard of review for a declaratory judgment entered as a result of the grant of a motion for summary judgment is whether that declaration was correct as a matter of law. We have held that [w]hile it is permissible for trial courts to resolve matters of law by summary judgment in declaratory judgment actions, the court must, in a separate document and in writing, define the rights and obligations of the parties or the status of the thing in controversy. This requirement is applicable even if the action is not decided in favor of the party seeking the declaratory judgment.

(Citations and internal quotation marks omitted).

### (2) Applicable Law

### (a) Construing Wills Generally

The Court of Appeals has discussed the process for construing a will in numerous cases. "When construing a will,

---

by the circuit court, as demonstrated by the record—in particular, the Opinion issued by the circuit court on November 30, 2010—appellants' questions are preserved for appellate review.

the 'paramount concern of the court is to ascertain and effectuate the testator's expressed intent.' " *Friedman v. Hannan,* 412 Md. 328, 339, 987 A.2d 60 (2010) (quoting *Pfeufer v. Cyphers,* 397 Md. 643, 649, 919 A.2d 641 (2007)). "In other words, the search is not for the testator's 'presumed [intention] but for his *expressed intention.*' " *Pfeufer,* 397 Md. at 649, 919 A.2d 641 (citations omitted) (alterations and emphasis in original). A court, in construing a will, "is governed, not by what the Court may think the testator wanted to say, but by what his words actually meant, because his words were designed to express his intention." *Hebden v. Keim,* 196 Md. 45, 51, 75 A.2d 126 (1950) (citations omitted).

In order to ascertain a testator's expressed intent, "that intent is gathered from the four corners of the will, with the words of the will given their plain meaning and import." *Friedman,* 412 Md. at 339–40, 987 A.2d 60 (citation and internal quotation marks omitted). Words of legal significance, though, "will be construed in that sense unless the will clearly indicates otherwise." *Pfeufer,* 397 Md. at 649, 919 A.2d 641 (quoting *Emmert v. Hearn,* 309 Md. 19, 23, 522 A.2d 377 (1987)) (internal quotation marks omitted); *see also Clarke v. Smith,* 49 Md. 106, 117 (1878) ("It is a well settled rule of construction, that technical words of limitation used in a devise, such as *heirs* generally, or *heirs of the body,* shall be allowed their legal effect, unless from subsequent *inconsistent* words it is made perfectly plain that the testator meant otherwise." (Emphasis in original)).

If a layperson—rather than an attorney—draws up the will, "the language used may be given the meaning it would commonly have to a person in his situation[.]" *Friedman,* 412 Md. at 340, 987 A.2d 60 (citation and internal quotation marks omitted) (alteration in original); *see also Friedel v. Blechman,* 250 Md. 270, 290, 242 A.2d 103 (1968) ("[T]he rule ... is that a testatrix who properly executes a will, who is competent and who is shown to have read the will is presumed to have understood it."); *Hebden,* 196 Md. at 51, 75 A.2d 126 ("The expressions in a will must be interpreted in

their ordinary and grammatical sense; and if the language is plain and unambiguous, the Court cannot give it a different meaning in order to give effect to a mere conjecture as to the testator's intention."). Regardless, "whether the words of the will are given their ordinary or legal meaning, '[e]xtrinsic evidence should not be admitted to show that the testator meant something different from what his language imports.... What he meant to say must be gathered from what he did say.'" *Emmert*, 309 Md. at 23, 522 A.2d 377 (quoting *Fersinger v. Martin*, 183 Md. 135, 138, 36 A.2d 716 (1944)) (alterations and omissions in original).

■ It is well-settled in Maryland that extrinsic evidence of the circumstances surrounding execution of a will is admissible in construing a will **only** if the will contains a latent ambiguity. The Court of Appeals discussed the use of extrinsic evidence as follows:

> Ordinarily, extrinsic evidence is not admissible to prove the testator's intent unless there is a latent ambiguity. *See Monmonier v. Monmonier*, 258 Md. 387, 390, 266 A.2d 17, 19 (1970). Yet, when ascertaining that intent, the court may consider "the situation of the testator and his relations with the parties to whom he has devised or bequeathed his property[.]" *Robinson v. Mercantile Trust Co. of Baltimore*, 180 Md. 336, 339, 24 A.2d 299, 300 (1942). In that regard, the will must be "read in the light of the surrounding circumstances existing at the time of its execution." *Hebden v. Keim*, 196 Md. 45, 48, 75 A.2d 126, 128 (1950).

*Friedman*, 412 Md. at 340, 987 A.2d 60 (alteration in original); *see also Frick v. Frick*, 82 Md. 218, 226, 33 A. 462 (1895) (" 'That the Court may put itself in the place of the testator by looking into the state of his property and the circumstances by which he was surrounded at the time of making his will is true, but this is done only to explain ambiguities arising out of extrinsic circumstances, and not to show a different intention from that the will discloses.'" (citation omitted)); *Hammond v. Hammond*, 55 Md. 575, 581 (1881) (" 'Extrinsic evidence is admissible only when the will is plain and clear upon its face,

and becomes doubtful when applied to the subject-matter.'"
(citation omitted)).

The Court of Appeals has defined a "latent ambiguity"
within the context of a will as follows:

> Such an ambiguity occurs when "the language of the will is
> plain and single, yet is found to apply equally to two or
> more subjects or objects." Extrinsic evidence is generally
> admissible to resolve a latent ambiguity. Indeed a latent
> ambiguity is "not discoverable until extrinsic evidence is
> introduced to identify the beneficiaries or the property
> disposed of by will, when it is developed by such evidence,
> either that the description in the will is defective, or that is
> applies equally to two or more persons or things."

*Emmert,* 309 Md. at 26–27, 522 A.2d 377 (citations and foot-
note omitted).

A "patent ambiguity," on the other hand, "is one
that is apparent on the face of the will itself, as, for example,
when different clauses of a will dispose of the same plot of
land to different devisees. A patent ambiguity must be re-
solved not from extrinsic evidence, but from the four corners
of the will itself." *Id.* at 27 n. 4, 522 A.2d 377 (citations
omitted). In cases where there is an ambiguity, but where the
testator's intention is clear from the context and content of the
will itself, then a court "may insert, delete, correct, or trans-
pose words and phrases in order to remove the ambiguity and
thereby effectuate the testator's intention." *Hebden,* 196 Md.
at 51, 75 A.2d 126 (citations omitted).

### (b) Construing Wills—Relevant Cases

In *Emmert,* 309 Md. at 20, 28, 522 A.2d 377, the Court of
Appeals held that the testator's will, which included the be-
quest of "all my personal property," was clear and that no
latent ambiguity existed. Paragraph Second of the testator's
will provided: "I bequeath all my personal property to my
surviving children to be divided equally." *Id.* at 20, 522 A.2d
377. There was a dispute over whether the phrase "all my
personal property" included intangible personal property, such
as corporate stocks, bonds, and bank accounts, as well as

tangible personal property. *Id.* at 20–21, 522 A.2d 377. Upon review, the Court of Appeals determined that "nothing on the face of the will [ ] qualifies or limits the bequest of personal property[,]" as there were "no examples in Paragraph Second of articles bequeathed by the testator to illustrate the type or nature of the personal property given to the legatees, nor any description or location of the personal property."[12] *Id.* at 26, 522 A.2d 377. The Court, therefore, concluded that "the language used in Paragraph Second of the will is unambiguous on its face." *Id.* The Court then examined whether Paragraph Second contained a latent ambiguity. *Id.* at 27, 522 A.2d 377. The Court discussed the case of *Wm. D. Shellady, Inc. v. Herlihy, Ex'r,* 236 Md. 461, 204 A.2d 504 (1964), where the testator bequeathed shares of Class "B" stock, even though it was discovered that he owned no shares of Class "B" stock, but rather owned shares of Class "A" stock. *Emmert,* 309 Md. at 27, 522 A.2d 377. The Court noted that in *Shellady,* the "latent ambiguity allowed the admission of extrinsic evidence to clarify the mistake in the property description." *Emmert,* 309 Md. at 27, 522 A.2d 377. In *Emmert,* 309 Md. at 27–28, 522 A.2d 377, however, upon review of the testator's will and Paragraph Second, the Court held that "[t]here [was] no indication that the property bequeathed . . . applies equally to two or more persons or things[,]" and "[e]xtrinsic evidence of the testator's intent should therefore have been excluded." As the language of the will was clear and no latent ambiguity existed, the Court held that the phrase "all my personal property" included both tangible and intangible personal property. *Id.* at 28, 522 A.2d 377.

---

12. In *Emmert,* 309 Md. at 25, 522 A.2d 377, the Court described the case of *LeRoy v. Kirk,* 262 Md. 276, 277 A.2d 611 (1971) as follows:

In *LeRoy,* the testator bequeathed "all of my personal property, including my automobile, boat and the contents of my house and outbuildings. . . ." We determined that the phrase following "personal property" in the bequest restricted it, by example, to tangible personal property. Thus, the bequest did not include stock certificates worth $150,000 that were mailed to the testator's house shortly before she died.

(Omission in original).

In *Darden v. Bright,* 173 Md. 563, 565, 574, 198 A. 431 (1938), the Court of Appeals held that the phrase "to each one of the children of my brother" in the testator's will was not latently ambiguous although the testator had two brothers, one who was alive at the time the will was executed and one who was deceased at the time the will was executed. The Court determined that the language in the will was "plain and precise," and that the testator, "by express terms[ ] unquestionably eliminated one group of the[ ] remaining nephews and nieces, and equally irrefutably [the] will establishes that his meaning was to give a legacy to every one of one group to the exclusion of all who constituted the other group." *Id.* at 569, 571, 198 A. 431. The Court noted that "[i]n the ordinary and grammatical sense a simple affirmation of a fact, relationship, or circumstance is of the present"—meaning the children of the living brother—and, had the testator intended to provide for the children of his deceased brother, he would have specified as such through language such as "to each one of the children of my dead brother[.]" *Id.* at 572, 198 A. 431. As such, the testator's words indicated that he meant to provide for the children of his living brother, and not the children of his deceased brother. *Id.* Accordingly, the Court held that extrinsic evidence was inadmissible, as "[s]uch declarations are only receivable to assist in interpreting an equivocation which results from the use of a term in the will which, upon application to external objects or subjects, is found to describe two or more external objects or subjects equally." *Id.* at 575, 198 A. 431.

In *Shipley v. The Mercantile Trust and Deposit Co.,* 102 Md. 649, 659, 62 A. 814 (1906), the Court of Appeals held that the phrase "dower and thirds" in the testator's will was not ambiguous. The Court reasoned as follows:

But it must be remembered that in no event can extrinsic evidence be resorted to in construing a will, except where upon reading the words questioned in connection with the entire will, or upon applying them to the facts in the case, there arises in the opinion of the Court, an ambiguity or difficulty of construction, and we cannot perceive that any

such exists here. The words "dower and thirds," in themselves have each a uniform, established meaning both in law and in common usage .... it is laid down "that a testator who uses words which have an intelligible, conventional meaning is not to be held as having used the words with any other meaning, unless the context of the instrument shows that he intended to do so." ... Looking to the will alone we think there can be no doubt that [the testator] used the words "dower and thirds" in their ordinary technical sense.

*Id.* at 659–60, 62 A. 814.

### (c) Per Stirpes Distribution

■ Md.Code Ann., Estates & Trusts Art. § 1–210, entitled "Representation per stirpes," provides, in pertinent part:

(a) Intestate succession.—When provision is made for representation in this article, the shares shall be determined in accordance with subsections (b) and (c) of this section.

(b) Issue of decedent.—In the case of issue of the decedent, the property shall be divided into as many equal shares as there are children of the decedent who survive the decedent and children of the decedent who did not survive the decedent but of whom issue did survive the decedent. Each child of the decedent who did survive the decedent shall receive one share and the issue of each child of the decedent who did not survive the decedent but of whom issue did survive the decedent shall receive one share apportioned by applying to the children and other issue of each nonsurviving child of the decedent the pattern of representation provided for in this subsection for the children and other issue of the decedent and repeating that pattern with respect to succeeding generations until all shares are determined.[13]

Stated otherwise, "per stirpes" means: "Proportionately divided between beneficiaries according to their deceased ancestor's share." Black's Law Dictionary 1181 (8th ed.2004).

---

**13.** Although not applicable to the Will in this case as Joanne did not specifically provide for representation or distribution per stirpes, a testator can provide for representation and distribution per stirpes in a

In *Weller v. Sokol,* 271 Md. 420, 432, 318 A.2d 193 (1974), the Court of Appeals held that the testator's "use of the phrase 'divided . . . among the issue and descendants of such of my children as may have died leaving lawful issue him or her surviving *per stirpes*' makes it pellucid that the testator was using 'issue' . . . [to] import[ ] a succession by representation from each of his children, just as if a child had died intestate on the date of termination owning a share of the corpus and leaving descendants surviving." In the case, there was a dispute as to whether the testator's children or grandchildren created the class to whom he had left a gift. *Id.* at 422, 318 A.2d 193. The Court observed:

> that in the absence of an expression of contrary intent the direction that a distribution [ ] made per stirpes will result in the distribution which would have been made under the statute of distribution, [which] was amplified in *Sollers v. Mercantile–Safe Deposit & Trust Co., supra,* 262 Md. at 610–11, 278 A.2d at 583, to the end that descendants will take in the manner provided by the statute of descent and distribution in effect at the death of the testator, just as if the person identified as the stock had died intestate at the time of distribution owning the subject of the gift[.]

*Id.* at 427, 318 A.2d 193. In determining that the distribution of the gift "was to be made only to descendants [children] living at the time of the distribution[,]" the Court noted that the "problem is resolved by the black letter of *Restatement of Property* [ ] § 303(1)[.]" *Id.* at 422, 428, 318 A.2d 193. Section 303(1) of the Restatement of Property provides:

> "When a conveyance creates a class gift by a limitation in favor of a group described as the 'issue of B,' or as the 'descendants of B,' and the membership in such class has been ascertained . . . then, unless a contrary intent of the conveyor is found from additional language or circum-

---

will, pursuant to Md.Code Ann., Estates & Trusts Art. § 1–210.1, entitled "Representation per stirpes—Wills."

stances, distribution is made to such members of the class as would take, and in such shares as they would receive, under the applicable law of intestate succession if B had died intestate. . . ."

*Weller,* 271 Md. at 428, 318 A.2d 193; *see also Clarke v. Clarke,* 222 Md. 153, 164, 159 A.2d 362 (1960) (The Court of Appeals approved of the rule set forth in § 303 of the Restatement of Property, and noted that comment (h) to § 303 states "that conveyances frequently contain language or have circumstances tending to corroborate the conclusions that the term 'issue' or 'descendants' has been used as substantially the equivalent of 'heirs of the body' and hence that distribution should be made in accordance with the law of intestate succession." (some internal quotation marks omitted)). In *Weller,* 271 Md. at 431, 436, 318 A.2d 193, as there was "no ambiguity in the intention of [the testator], as expressed in his will[,]" "the distribution to eligible class members is governed by the intestacy law as it stood when the will of [the testator] took effect[.]"

### (3) Analysis

Returning to the case at hand, we conclude that the circuit court erred in finding that no ambiguity existed in the third and fifth paragraphs of the Will. As such, the circuit court improperly refused to consider the extrinsic evidence of surrounding circumstances offered by appellants.[14]

 As to the third paragraph of the Will, the question is whether the phrase "my interest in any such property not

---

**14.** At oral argument, appellants contended we may ascertain Joanne's intent through examination of the surrounding circumstances without first determining the existence of a latent ambiguity. Appellants are incorrect on this point. As the case law makes abundantly clear, a testator's intent "is gathered **from the four corners of the will,** with the words of the will given their plain meaning and import." *Friedman,* 412 Md. at 339–40, 987 A.2d 60 (citation and internal quotation marks omitted) (emphasis added). Evidence of a testator's intent is admissible only once a court determines that a latent ambiguity exists. *Id.* at 340, 987 A.2d 60. As such, we must first determine whether a latent ambiguity exists in the Will before consideration of any surrounding circumstances may be undertaken to discern Joanne's intent.

otherwise disposed of by this Will" contains a latent ambiguity. We conclude that it does as the phrase, while seemingly "plain and single" on its face, could "apply equally to two or more subjects or objects." *Emmert*, 309 Md. at 26–27, 522 A.2d 377 (citation omitted). The phrase may refer only to "tangible articles of a personal nature" or include all property, real and personal. The issue is whether "such" relates backward to the preceding clause concerning personal property or forward to the language "property not otherwise disposed of by this Will." It is not possible to conclusively discern the meaning of the phrase by the plain language of the third paragraph or Joanne's intent as to its meaning from the four corners of the document.

One interpretation is that the phrase "any such property" refers to personal property. According to the clause preceding the language in question, any tangible articles of a personal nature are to be given to Joanne's son, Steven. This gives rise to the interpretation that the clause in question, "my interest in any such property not otherwise disposed of by this Will," includes personal property in which Joanne may have had an interest, other than property of a personal nature that is described previously. Another, or second, interpretation is that the phrase "any such property" refers to the language contained in the clause with it, and includes any property—personal and real property—not disposed of by the Will. Under this interpretation, Joanne's interest in any such property, real and personal, not otherwise disposed of in the Will, shall be given to Steven. The latent ambiguity consists of whether the "such property" is personal property in which Joanne may have an interest that is not disposed of by the Will, or her interest in "such property" being any property, real or personal, not disposed of by the Will. Use of the modifier, "any such property," does not render the phrase unambiguous.[15]

---

15. Black's Law Dictionary defines "such" as follows: "1. Of this or that kind <she collects a variety of such things>. 2. That or those; having

*Emmert,* 309 Md. 19, 522 A.2d 377, and *LeRoy,* 262 Md. 276, 277 A.2d 611, are distinguishable. In both of those cases, the Court of Appeals determined whether the use of the words "personal property" in a will covered both tangible and intangible personal property or just tangible personal property. *Emmert,* 309 Md. at 20–21, 522 A.2d 377; *LeRoy,* 262 Md. at 281, 277 A.2d 611. In this case, the question is whether the language "any such property" could reasonably have been intended to include real property in addition to personal property. This opinion does not encroach on the holdings in *Emmert* and *LeRoy,* which set forth the definition of the term "personal property" in the context of a will. Rather, in this case, we are confronted with ambiguity in the use of the phrase "any such property," in the context of a will, drafted by the testator, a non-lawyer, that contained specific dispositive provisions as to tangible personal property but did not mention her primary asset, i.e., her residence. Unlike *Emmert* and *LeRoy,* we are not tasked with determining the inclusiveness of a bequest of "personal property," or the meaning of "personal property," but rather whether the testator appreciated the legal distinction between real and personal property. As such, given the use of the language in the context of the Will as a whole, we conclude that a latent ambiguity exists and that the circuit court erred in finding that the phrase "any such property" was unambiguous and "grammatically refers to

---

just been mentioned <a newly discovered Fabergé egg will be on auction next week; such egg is expected to sell for more than $500,-000>." Black's Law Dictionary 1473 (8th ed.2004). Use of the modifier "such," however, must be analyzed in context of the language around it. Although real property is not mentioned in the third paragraph of the Will, real property is "property not otherwise disposed of by this Will." Joanne was a lay person utilizing a store bought computer program. It is impossible to discern whether Joanne was aware of the Black's Law Dictionary definition of "such," whether she intended the phrase "any such" to refer back to the preceding personal property, or whether she intended the phrase "any such property" to refer to property not otherwise disposed of by the Will. Given that Joanne was a lay person drafting her own will, the phrase "any such property" may be given the meaning it would commonly have to a person in Joanne's situation. *Friedman,* 412 Md. at 340, 987 A.2d 60.

the property previously mentioned in the same paragraph— that is, personal only."

 As to the fifth paragraph of the Will, the question is whether the phrase "surviving members[16] in order of succession" contains a latent ambiguity.[17] We conclude it does. It is unclear from a reading of the Will itself what the fifth paragraph means or what Joanne intended it to mean. The phrase is susceptible to multiple meanings, including that distribution be made to: (1) Joanne's surviving son, Steven, and his son, Bret, in that order; (2) to all of Joanne's surviving family members per stirpes; (3) to the members or people specifically listed in the fifth paragraph; (4) to Joanne's family by way of royal succession;[18] or (5) to some other group that

---

**16.** At oral argument, Smith, Maberry, and Talley urged this Court to analyze the term "members" standing alone. We decline to isolate the term "members" and, in construing the Will, shall review language in context, including the phrase "surviving members in order of succession."

**17.** At oral argument and in their brief, Smith, Maberry, and Talley contended that the language in the fifth paragraph is a residuary clause. Although appellants disagreed at oral argument, before the circuit court, appellants agreed that the language of the fifth paragraph could be taken as a residuary clause. During the November 29, 2010, motions hearing, the following exchange occurred between appellants' counsel and the circuit court:

[APPELLANTS' COUNSEL]: The ending of that paragraph [Paragraph FIFTH] is sort of a catch-all or a residuary clause. That paragraph says, "Any property not otherwise disposed of shall go to my surviving members in order of succession." We're looking at a lay person who's writing this—

THE COURT: So you do agree that's a residuary clause?

[APPELLANTS' COUNSEL]: It can be taken as a residuary clause. This Court need not address whether or not the fifth paragraph contains a residuary clause as the issue is not dispositive of whether the phrase "surviving members in order of succession" is ambiguous.

**18.** According to appellants, "Joanne could have concluded that 'surviving member[s] in order of succession,' was similar to succession associated with royal families. Thus, her only surviving son, Steven, would be first in succession to her estate, and if he predeceased her, then her 'successor' would be her grandchildren."

In contrast, according to Smith, Maberry, and Talley, "[i]f the phrase 'in order of succession['] was really meant to mean in a manner similar to royal succession, the balance of the estate would actually go to the

Joanne had in mind when using the phrase. Perhaps Joanne understood and meant "surviving members in order of succession" to apply only to her surviving son, Steven, and then on to his son, Bret, and like the testator in *Darden*, 173 Md. at 572, 198 A. 431, meant to provide for the children of the living brother rather than for the children of both the living brother and deceased brother. Equally plausible is the interpretation that Joanne meant the assets to be "[p]roportionately divided between beneficiaries according to their deceased ancestor's share." Black's Law Dictionary 1181 (8th ed.2004).

In finding that the phrase "surviving members in order of succession" unambiguously meant per stirpes distribution, the circuit court incorrectly relied on the Court of Appeals's holdings in *Clarke*, 222 Md. 153, 159 A.2d 362, and *Weller*, 271 Md. 420, 318 A.2d 193. Relying on *Clarke*, 222 Md. 153, 159 A.2d 362, the circuit court stated: "Similarly, Maryland cases have found that the use of the term 'in succession' implies inheritance *per stirpes* and not *per capita*." The circuit court stated that the Court of Appeals in *Weller*, 271 Md. 420, 318 A.2d 193, found it important that the testator used the term "succession" within his will. In *Clarke*, 222 Md. at 155, 159 A.2d 362, the question involved the meaning of the term "issue" as used by the testator in his Will when he stated " 'from and after the death of my said son * * * then to his issue, absolutely.' " In *Weller*, 271 Md. at 432, 318 A.2d 193, the question likewise concerned the meaning of term "issue" as used in the phrase " 'divided ... among the issue and descendants of such of my children as may have died leaving lawful issue him or her surviving *per stirpes* [.]' " Neither case is dispositive as the Court of Appeals's analysis in *Clarke* and *Weller* concerned the use of the legal term "issue," rather than the use of the phrase "surviving members in order of succession." Of note, in *Weller*, 271 Md. at 432, 318 A.2d 193, the

---

eldest granddaughter, as the oldest child of the eldest son, since the line of royal succession only falls to a younger child and his heirs if the eldest child produces no heirs."

testator used the words "per stirpes," in addition to the term "issue," in his will to direct distribution to a specific group.

Smith, Maberry, and Talley have not identified any case law—and this Court has not found any authority—in which a Maryland appellate court has interpreted the meaning of the phrase "surviving members in order of succession." To conclude that the phrase obviously or unambiguously means per stirpes distribution or that the phrase is somehow implicitly analogous to the word "issue" is unfounded, given the readily apparent ambiguity of the phrase-and as stated above, Maryland appellate courts have not reached such a conclusion. Unlike the phrase "dower and thirds," "surviving members in order of succession" does not contain words that "in themselves have each a uniform, established meaning both in law and in common usage[,]" such that "there can be no doubt that [the testator] used the words . . . in their ordinary technical sense." *Shipley,* 102 Md. at 659–60, 62 A. 814. Indeed, in the written opinion dated November 30, 2010, the circuit court observed that the phrase "may not be common English currently in plain usage." We conclude that the phrase "surviving members in order of succession" is ambiguous on its face and that it is not possible to determine from the use of this phrase that Joanne intended per stirpes distribution of her property, which may or may not have included distribution of her real property depending on the interpretation of the third paragraph of the Will. For all of the reasons stated above, the circuit court erred in finding the third and fifth paragraphs of the Will unambiguous and excluding extrinsic evidence as to Joanne's intent.

**JUDGMENTS OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY ELIZABETH SMITH, REBECCA MABERRY, AND TERESA TALLEY.**